Linda Lee REED, Appellant,

v.

Robert WORMLEY et ux., Appellees.

No. 5028.

Court of Civil Appeals of Texas, Eastland.

July 14, 1977.

Rehearing Denied Aug. 11, 1977.

John F. Campbell, Campbell & Davidson, Austin, for appellant.

W. Chapman Byrd, Harriet S. Owen, Austin, for appellees.

McCLOUD, Chief Justice.

Robert and Gertrude Wormley, who will sometimes be referred to as the Wormleys, sued Linda Reed and their son, Rodney, seeking termination of the parent-child relationship between Linda and Rodney, and their daughter. Linda Reed, the mother of the child, and Rodney Wormley, the father, were never married. Rodney filed a statement of paternity as authorized by Sections 13.01 and 13.02 of the Texas Family Code. The court rendered judgment, based on jury findings, terminating the parental rights of Linda and Rodney, and appointing Robert and Gertrude Wormley permanent managing conservators of the child. Only the mother, Linda Reed, has appealed. We affirm.

The jury found that Linda knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child; Linda failed to support the child in accordance with her ability during a period of one year before January 22, 1976; it would be in the best interest of the child to terminate the parent-child relationship between Linda and the child; and, Robert and Gertrude Wormley should be appointed managing conservators of the child.

Robert and Gertrude Wormley filed their original petition on May 28, 1975. At that time, the child was approximately eight months old. On January 22, 1976, the father, Rodney Wormley, filed an answer to his parents' petition and also a cross claim against Linda, alleging she failed to support the child in accordance with her ability during a period of one year ending within six months of the date he filed his cross claim. Robert and Gertrude Wormley at no time alleged failure to support as a reason for termination. They contend, however, the issue was tried by implied consent. Linda does not refute that contention and no issue has been raised regarding pleadings.

Section 15.02 of the Texas Family Code provides in part:

"A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

(1) the parent has:

.     .     .     .

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; or

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; or

(F) failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition; or

.     .     .     .     .

(K) .   .   .   and in addition, the court further finds that

(2) termination is in the best interest of the child."

The child was born on September 15, 1974. At that time, Linda was eighteen and Rodney twenty-one. They started dating in 1971 while attending high school. Rodney moved to Temple, Texas, where he attended college. Linda followed and they were living together in Temple when she

became pregnant. Rodney married Gail Knox August 14, 1975. He and Gail testified, however, that he and Linda continued their affair until shortly before trial. Their relationship was frequently tumultuous with much arguing and fighting.

■ The mother first contends there is no evidence she failed to support the child in accordance with her ability during a period of one year before January 22, 1976. She argues the Wormleys have failed to meet the test announced in *Wiley v. Spratlan*, 543 S.W.2d 349 (Tex.1976). We disagree. In considering a no evidence point, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the jury finding, and reject the evidence and inferences contrary to the finding. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex.1974).

From October 1974, to April 1975, Linda received $86 per month from the State Welfare Department as Aid to Families with Dependent Children. During the twelve month period under consideration, Linda worked for four different employers. She worked about a month to a month and a half for each employer and received approximately $2.10 per hour. She also received some money from her grandfather and Rodney.

On June 11, 1975, the trial court entered a temporary order appointing the Travis County Child Welfare Unit temporary managing conservator of the child. An agreement was reached by the parties whereby the child was placed in possession of the Wormleys during the week and the mother had possession of the child on weekends. The mother was never ordered by the court to pay the Wormleys any money for support of the child during this time. There is also evidence that Linda offered, on one occasion after the case was filed, to give Gertrude Wormley some money for the child, and the offer was refused.

A highly controverted issue in this case is whether the mother or Gertrude Wormley had actual physical possession of the child following her birth. There is much evidence that the mother essentially left the child with Gertrude Wormley who cared for her except for short periods when the child was with the mother. Linda contends that Gertrude Wormley kept the child at times during the day while Linda worked or looked for a job, and the baby occasionally spent the night at the Wormleys. Gertrude Wormley testified that Linda did not provide food and clothing for the child. She stated that the mother had only "bought one or two items." Robert Wormley testified that since the birth of the child, he knew of nothing that Linda had done financially for the child in the way of clothing, food, or medicine. This is some evidence to support the jury finding.

■ The mother also argues she was "excused" from providing support for the child after June 11, 1975, since the court did not order her to make any child support payments, and furthermore, she offered support which was refused. The evidence shows the child was properly cared for while in the Wormleys' possession and there is no evidence they sought or wanted any financial help from Linda. We think Linda Reed's duty to support her child after June 11, 1975, was excused, but the fact that the failure to support is excused is only "one of the factors to be considered in asserting the best interest of the child." *Holley v. Adams*, 544 S.W.2d 367 (Tex.1976).

■ The mother also asserts the finding that she failed to support her child in accordance with her ability for a period of one year prior to January 22, 1976, is factually insufficient. When passing on a factually insufficient evidence point, we must, and do, consider all the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Linda testified that she spent the "AFDC" money on clothes and food for the child. The father, Rodney, testified that she spent the "welfare check" on clothes and food for the child and an occasional item for herself. He said she offered him some of the money, but he told her the money was supposed to be used for the child. Rodney testified he gave Linda some money and she bought a few things for the child, but she later told him she gave half of the money to a "young man" she was seeing

at the time. Linda's mother, Geraldine Grant, testified that most of the welfare money was spent for the baby. She stated she told Linda she should not spend so much on clothes since the baby was so tiny. Renee Williams, daughter of the Wormleys, testified that she provided most of the clothes the child had when she was very young. She said they were her daughter's things. The testimony concerning who had actual physical possession of the child is directly controverted. The mother contends that Gertrude Wormley looked after the child during the day, but the child was usually with her at night. There is much testimony to the effect that from the child's birth until the time of trial, the child was usually with the Wormleys, both day and night, except for occasional times when the mother would keep the child. In view of such highly controverted testimony, we cannot say the finding that the mother failed to support the child in accordance with her ability is factually insufficient.

Linda Reed also asserts there is no evidence, or alternatively, factually insufficient evidence, to support the finding she knowingly placed or knowingly allowed the child to remain in surroundings which endangered the physical or emotional well-being of the child. Rodney testified that Linda left the child alone in a parked car for about forty minutes late one night. He said the window was "cracked" so the child could get some fresh air and he thought this was improper because somebody could have easily unlocked the door and taken the child. Gertrude Wormley testified that on one occasion she went over to Linda's apartment to pick the child up and she saw Linda going upstairs and the baby was in the apartment by herself. Rodney testified that on one occasion he went by Linda's apartment at about 1:30 or 2:00 a. m. and discovered she was not there. After waiting for twenty or thirty minutes, she returned. They entered the apartment and the baby was in the apartment alone in the baby crib. Linda denied that she had ever left the child alone in a car or in her apartment. There is some evidence to support the jury's finding and after considering all the evidence we cannot say the finding is factually insufficient. *In re King's Estate,* supra.

■ Linda Reed next argues the trial court erred in overruling her motion for directed verdict because there is no evidence that it would be in the best interest of the child to terminate the parent-child relationship between the mother and the child. We overrule this point. The complaint being urged was not included in Linda Reed's motion for directed verdict. Rule 268, T.R.C.P.

■ Linda further argues the finding that it would be in the best interest of the child to terminate the parent-child relationship is factually insufficient. We disagree. We have previously held that the mother was "excused" from providing financial support while the child was in the possession of the Wormleys under the direction of the Austin Child Welfare Unit. But as observed in *Holley v. Adams,* 544 S.W.2d 367 (Tex.1976), this is only one of the factors to be considered.

There is evidence that Linda Reed asked Gertrude Wormley and Renee Williams if either would like to keep the baby the first night she was brought from the hospital. They both told her they thought the baby should be with her mother. Several persons testified that within a few days after the child was brought from the hospital, Gertrude Wormley started taking care of her, both during the day and at night. The witnesses said the child spent the day with Gertrude at her beauty shop, and at night, she stayed at the Wormleys' home. Linda, her mother, and other witnesses, contradict this evidence. Linda testified that Gertrude Wormley was more or less acting as a babysitter. There is evidence that on the occasions when Linda did keep the child, the child when returned to the Wormleys usually suffered severe diaper rash and had sores in her mouth and ears. Geraldine Grant said the diaper rash was not significant. Terri Wormley testified that within a few days after the child was brought from the hospital, Linda asked Gertrude Wormley to keep the child one night, which she did, and they did not see or hear from Linda

again for about a week. Paulette Sauls said that while Gertrude Wormley was keeping the child at her beauty shop during the day, the mother would only come by about once a week or once every two weeks to see the child. On these occasions she stated that Linda did not pay much attention to the child. Dwight Cowan testified that Linda told him that he and his wife could have the child. There is considerable testimony that when the mother picked the child up on weekends, the child started crying. There is other testimony that the child was glad to see the mother. Gertrude Wormley testified that a few days prior to filing the petition for termination, Linda had picked the child up at the Wormleys and said she was never going to bring her back. She said Linda's reason for picking the child up was because Rodney was seeing Gail. A few days later Linda brought the child to the Wormleys because she was very sick. The child was taken to the doctor. Gertrude Wormley testified that several days passed and Linda did not even bother to call and see how the baby was. At this point, the Wormleys decided to file the termination suit. Linda refutes this testimony.

Gertrude Wormley testified that Linda shows no motherly instincts. Ada Anderson, sister of Gertrude Wormley, testified that she was keeping Renee's children and Linda brought the child in the house, put her down, and left without asking if Ada would keep the baby. On that occasion, Ada Anderson stated the child's "whole little bottom was just raw. It was almost like a beef steak. There was powder caked on it and it was just a very cruel sort of thing." Mrs. Anderson, who has a Masters Degree in Educational Psychology from the University of Texas, stated she observed Linda several times with the child and she shows "absolutely no emotional reaction" to the child. There is none of the normal "cuddling, smiling or talking." She said the child has an "apparent fear" of Linda and pulls away from her. Annie Robertson testified she saw no "negative reaction or repulsion" between Linda and the child. Pamela Conlan, an employee of the Travis County Child Welfare Unit, observed the child and mother on one occasion and she thought the child was glad to see her mother. She also testified she observed a warm and affectionate relationship between the child and Gertrude Wormley. Other parties testified they observed a warm and loving relationship between Linda and the child.

Robert Wormley has been a licensed real estate broker for about twenty-three years. He and his wife's combined annual income is approximately $30,000 per year. He stated they plan to establish an educational trust for the child and see that she has a wholesome environment in which to live. The Wormley home is clean and attractive. The child's room is colorful and orderly.

There is evidence Linda has threatened suicide on several occasions. Also, she has threatened at various times to kill Rodney, Robert and Gertrude Wormley. Gertrude testified that Linda last threatened to kill her during a recess while the termination trial was in progress. Linda testified she never intended to commit suicide and she only made the threats because the Wormleys would not let her have her child.

Linda's work history is very spasmodic. She has trouble getting and retaining employment. At the time of trial, May 1976, she had worked about one week at the Chess King, and this was the only job she had had in 1976, except just "doing things" for her grandfather. She has completed the tenth grade, but stated she was planning to take a GED test. Her future plans were indefinite. On deposition taken a few days before trial, she stated she planned to go to California, either Los Angeles or Oakland. She said an aunt in Los Angeles would keep the child. Her mother had recently moved from Austin to Oakland. At trial, she stated she would probably remain in Austin for sometime before going to California.

There is evidence that when Linda had possession of the child she did not properly care for her physical needs. There is evidence that her main concern was her relationship with Rodney, rather than her relationship with the child. Her explanation for leaving the infant unattended in an

apartment and automobile is that it did not occur. The jury could either accept or reject her explanation. There is substantial evidence in the record to support the Wormleys' contention that they have essentially taken care of the child since her birth. The evidence is uncontradicted that a warm and loving relationship exists between the child and the Wormleys. There is no assertion that the child has not been properly cared for while in the Wormleys' possession. Their home appears to be stable. The Wormleys are active in church and community affairs. They have shown great love and compassion for their granddaughter. The record indicates they possess the maturity, intelligence, character, and concern for the child, which is essential for her healthy emotional and physical development.

This trial lasted four days. The jury had ample opportunity to weigh and consider the testimony of the many witnesses. Much of the testimony was contradictory. We hold that the evidence is not factually insufficient to support the jury's finding that it would be in the best interest of the child to terminate the parental rights of the mother, Linda Reed, and appoint the child's grandparents, Robert and Gertrude Wormley, managing conservators.

We have considered all points of error and all are overruled. Judgment of the trial court is affirmed.