**Diana ZIEGLER, Appellant,**

v.

**TARRANT COUNTY CHILD WELFARE UNIT, Texas Department of Human Resources, Appellee.**

No. 2–84–159–CV.

Court of Appeals of Texas,
Fort Worth.

Nov. 29, 1984.

Mark S. Cochran, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall, Asst. Dist. Atty., Fort Worth, for appellee.

Before JORDAN, BURDOCK and HILL, JJ.

## OPINION

JORDAN, Justice.

The Child Welfare Unit of the Texas Department of Human Resources brought this action against the natural mother of five children to terminate her parental relationship with her children. The suit also sought to terminate the parental rights of three different fathers of the five children. The mother's rights were terminated under TEX.FAM. CODE ANN. sec. 15.02 (Vernon Supp.1984), the trial court finding that she knowingly placed or knowingly allowed the children to remain in conditions and surroundings which endangered their physical and emotional well-being and engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical and emo-

tional well-being of the children. The court also found that termination would be in the best interest of the children. The court also terminated the parental rights of Larry Keith McKinney, father of three of Ziegler's children, and of Henry Clay Ziegler, father of Crystal Lynn Ziegler. The court further found in its judgment that the alleged father of Rex Allen Thompson was Ray Smith who had failed to establish any right or interest in or to the child, Rex Allen Thompson, and that the parent-child relationship between Ray Smith and Rex Allen Thompson does not exist in law or in fact.

Only the natural mother, Diana Lynn Ziegler, appeals from the decision terminating the parental rights.

We affirm.

■ There are general principles which apply to all parent-child termination proceedings. There is a strong presumption that the children's best interest is usually served by keeping them with their natural parents. *Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.1976). Once evidence is produced, however, to support a finding that that presumed fact does not exist, the case will proceed as if no presumption exists. *In Interest of Guillory,* 618 S.W.2d 948, 951 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). In involuntary parent-child termination proceedings, the essential facts must be proved by "clear and convincing evidence." *In Interest of G.M.,* 596 S.W.2d 846, 847 (Tex.1980). The clear and convincing standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979).

This is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal cases.

Diana Lynn Ziegler raises fifteen points of error in her appeal. By her first six points of error, it is her position that there was no evidence, or in the alternative insuf-ficient evidence, to support the trial court's findings that she knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children; or that she engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; or that termination of the parent-child relationship between Ziegler and her children would be in the best interest of the children. These six points of error will be grouped and discussed together.

■ In determining a "no evidence" point, we may consider only the evidence and inferences which tend to support the finding of the jury and must disregard all evidence and inferences to the contrary. *Stodghill v. Texas Emp. Ins. Ass'n,* 582 S.W.2d 102, 103 (Tex.1979); *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the trial court's finding, the point must be overruled and the finding upheld. *In Re King's Estate,* 244 S.W.2d at 661–62.

■ Where the challenge to a jury finding or a finding of the court is framed as an "insufficient evidence" point, we are to consider all the evidence in the case, both that in support of and that contrary to the finding, to determine if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). If the appellate court so determines, the finding must be set aside and a new trial ordered. *Id.*

■ This action to terminate the natural mother's parental rights to her five children was brought under TEX.FAM. CODE ANN. sec. 15.02(1)(D), (E), and subsection 2 of sec. 15.02. Under 15.02(1)(D), the parental rights may be terminated if the court finds that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings

which endanger the physical or emotional well-being of the child. Section 15.02(1)(E) permits termination if the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. Subsection 2 of sec. 15.02 requires that termination be in the best interest of the child. Both elements of subdivision 1 and subdivision 2 must be established before parental rights may be terminated. Termination may not be based on a finding of the best interest of the child alone. Finding of violation or infringement of some of the provisions of subdivision 1 is also required. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex.1976); *Wiley*, 543 S.W.2d at 351.

Diana Lynn Ziegler, both in her original brief and in a reply brief, argues that the Child Welfare Unit has failed to meet its burden of proof as to her children: Rex Thompson; Keith McKinney; Jessica McKinney; and Crystal Lynn Ziegler. Ziegler claims that there was not clear and convincing evidence that she had either placed or allowed these four children to remain in conditions or surroundings which endangered their physical or emotional well-being. She also maintains that as to these four children the proof was insufficient to show she had engaged in conduct or knowingly placed these children with persons who engaged in conduct which endangered their physical or emotional well-being. Additionally, she contends that there was a complete lack of evidence, or insufficient evidence that it would be in the best interest of the four above-named children to terminate her parental rights.

We shall recite only enough facts to portray the surroundings and home environment of these five children for approximately one and half to two years prior to the time this case was tried in February of 1984. The record shows a young woman, in her late 20's, married twice, with five children ranging, at time of trial, in ages from three to eight, who had held nine or ten jobs in the year or year and a half preceding the trial, and who had had many residences during that time. The first husband, Lawrence McKinney, father of three of her children, beat her and their oldest boy, Kelly, and on one occasion McKinney allegedly held Kelly out of a window at their home. Diana Lynn, though she eventually divorced McKinney, lived with him for sometime after these instances of brutality to their son.

She next married Henry Clay Ziegler, who, the record shows on one occasion, placed Kelly in scalding bathtub water as punishment. Both of Kelly's feet, top and bottom, were badly burned. Ziegler was convicted of the offense of injury to a child for this offense and received a ten-year probated sentence. Diana continued to live with Ziegler even after he got out of jail for the offense of injury to a child and once lived with him in Illinois shortly before this trial. Moreover, she failed to obtain medical treatment for Kelly's badly burned feet for two full days after that incident.

Diana Ziegler was convicted of the offense of failure to report child abuse involving the burning of Kelly's feet in October of 1982. In October of 1983, Diana pled guilty to possession of amphetamines, a controlled substance.

The Child Welfare Unit eventually took possession of all five children in either late 1982 or early 1983. In addition to the scalding incident, there was evidence of severe bruises, of different ages, on Kelly's back, thigh, and chest, which suggested battered child syndrome to the doctor at John Peter Smith Hospital who examined Kelly. There was also evidence that at different times Diana Ziegler was associated with, and on occasion lived with, people who had criminal records for child abuse. She once lived with a woman, Barbara Pruitt, who had received a 20-year sentence for child abuse, and once permitted a man named Herman "Hawkeye" Rogers, who had previously molested a three-year-old child, to live in her home. "Hawkeye" beat her and at one point, imprisoned her in her own home. Some of these incidents occurred when all of her children lived with her, and before they were removed by the

Child Welfare Department. On one occasion when Diana Lynn had an unsupervised visit with Kelly in her home after the children had been removed by the Child Welfare, Diana Lynn Ziegler spanked Kelly hard enough to leave bruises from one side to the other, from top to bottom, on Kelly's buttocks. At time of trial, she was living in a house with a 60-year-old woman and with a man named Denver Taylor, for whom she worked as a plumber's helper.

It is true that practically all the evidence of child abuse and mistreatment concerned Kelly McKinney, the second oldest of these five children, and that there was little or no evidence of any actual abuse or mistreatment of the other four children. There was evidence that some of the other four children had emotional problems. There was evidence that Jessica had nightmares and that at least two of the boys had bedwetting problems. Other than this evidence, there was no indication of any physical or emotional problems with the other four children.

Diana Ziegler contends, therefore, that there is no evidence or legally insufficient evidence to support the trial court's findings with regard to Rex, Keith, Jessica or Crystal.

█ The question thus presented is whether or not the evidence of the severe and repeated abuse and mistreatment of the child, Kelly McKinney, and the evidence of the mother's instability and dependence on different men who had a history of abusing children, warrants the termination by the court of her parental rights to all of the children. We hold that it does.

█ Proof of just one of the acts enumerated in sec. 15.02(1), the Texas Family Code, when coupled with sufficient proof that termination is in the best interest of the children, will sustain the proponent's burden of proof by clear and convincing evidence. *Wiley,* 543 S.W.2d at 351. Evidence in this case is sufficient to support the trial court's findings under both secs. 15.02(1)(D) and (E), as well as subsection 2 of 15.02.

█ It has been held that the decision to terminate the parent-child relationship under subsection (E) requires that the conduct be committed in the presence of the child but does not require that it be directed toward the child. *Lane v. Jefferson County Child Welfare Unit,* 564 S.W.2d 130, 132 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). In the case at bar, even though there was an absence of proof of any abuse or mistreatment directed at the other four children, there is ample evidence of violent acts and behavior directed at Kelly and at his mother in the presence of the four other children.

A case somewhat similar on its facts to the one at bar is *In Interest of S.D.S.,* 648 S.W.2d 351 (Tex.App.—Fort Worth 1983, no writ). There the natural father committed acts of violence which endangered the children and the mother failed to respond or take any action to protect the children for five months. *Id.* at 353. The majority opinion held there was clear and convincing evidence that the statutory grounds of sec. 15.02(1)(D) and (E) had been met. *Id.* As in that case, the mother's concern for her children in this case has been untimely. Appellant's failure to seek medical attention for Kelly's second-degree burns was related to her fear of having the children taken away from her and possibly to her desire to protect herself and her then husband. *See Reed v. Wormley,* 554 S.W.2d 254 (Tex.Civ.App.—Eastland 1977, writ ref'd n.r.e.), where the court relied upon evidence indicating that the mother's main concern was her relationship with the father of the child rather than with the child. *Id.* at 258.

With respect to the finding of the trial court that under the evidence in this case it would be in the best interest of all of these children to terminate the parental rights of their mother, we refer to nine factors considered by courts in ascertaining the best interest of the child which are set out in *Holley,* 544 S.W.2d at 372. Our review of this record indicates that a number of these factors are present here.

■ The mother's history of general instability, her inability to hold a job, her general insecurity, and her propensity for dependency upon men she knew to be wife and child abusers, all as reflected in this record, convinces us that the termination of her parental rights was necessary.

We hold that the trial court's findings under sec. 15.02(1)(D) and (E), as well as subsection 2 of 15.02 are supported by clear and convincing evidence that the termination of parental rights in this case was proper. Ziegler's first six points of error are overruled.

By her points of error seven through fifteen, Diana Ziegler complains of the admission in evidence of the Child Welfare Unit's exhibits nos. 1 through 9. The exhibits consisted of a report in affidavit form of the treating physician at John Peter Smith Hospital in Fort Worth, and various other hospital records, including a progress report, a consultation report, nurses' reports and a discharge summary. Ziegler objected to the admission of all of these records on the grounds that they contained hearsay and that no proper predicate was laid.

We shall discuss and dispose of points of error seven through fifteen together because they involve similar type records and similar complaints. To discuss each one would unnecessarily prolong this opinion.

Although the Child Welfare Unit contends that Ziegler's objections were inadequate and too broad to properly preserve any error in the admission of these records, we overrule that contention because in most cases counsel for Ziegler read into the record the objectionable part of the exhibits and stated that those portions did constitute hearsay. Regardless of whether the objection was sufficient and specific enough, we will consider the errors complained of in the admission of these records.

We have examined all of the records complained of in points of error seven through fifteen and conclude that all of them were admissible under the TEX.R. EVID. 803(4), (6) and 805, which were ef-

fective September 1, 1983, and which are therefore applicable to this case.

Rule 803 is styled: Hearsay Exception; Availability of Declarant Immaterial. The rule then provides the following are not excluded by the hearsay rule, even though the declarant is available as a witness: 803 (4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pains, or sensations, *or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.* (Emphasis ours.) Rule 803 (6) provides: Records of regularly conducted activity, or memorandum, report, record, or data compilation in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

TEX.R.EVID. 805 provides: Hearsay Within Hearsay. Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.

Without question some of the statements contained in these hospital records would not have been admissible under the common law or under former art. 3737e, TEX. REV.CIV.STAT.ANN. (Vernon Supp.1984). However, the advent of the Texas Rules of Evidence affected a change in a number of the former rules of evidence. In particular, it changed and in many ways made less restrictive the hearsay rule and the excep-

tions thereto. This is especially true of what used to be known as the business records statutes.

 After a careful review of these exhibits complained of in Ziegler's points of error seven through fifteen, we have concluded that all of them, and the information and material therein, are admissible under the above-quoted rules of evidence. For the most part, these records relate to the medical personnel's prognosis, diagnosis, progress reports, and causation and source of Kelly McKinney's burn and bruise injuries.

Moreover, even if there was any error in the admission of these records, we hold it was harmless error for the reason that all or at least most of the important aspects of this information was properly admitted through testimony of witnesses, including medical doctors. Points of error seven through fifteen are overruled.

For the reasons stated, we affirm the judgment of the trial court.