

# IN THE
# TENTH COURT OF APPEALS

## No. 10-19-00411-CV
## No. 10-19-00412-CV

## IN THE INTEREST OF A.D., JR., A CHILD

**From the 278th District Court**
**Walker County, Texas**
**Trial Court No. 18-28,739**

**&**

## IN THE INTEREST OF B.S. AND J.M., CHILDREN

**From the 278th District Court**
**Walker County, Texas**
**Trial Court No. 18-28,745**

## MEMORANDUM OPINION

In eight issues in appellate cause numbers 10-19-00411-CV and 10-19-00412-CV,

appellant, Darkevia Jones, challenges the trial court's orders terminating her parental

rights to her children, A.D., B.S., and J.M.  Because we overrule all of appellant's issues in both appellate cause numbers, we affirm.

## I.     THE APPELLATE RECORD

In her first issue in both appellate cause numbers, appellant asserts that she was denied her rights of due process and due course of law because the trial court denied her a record of all relevant hearings.  More specifically, appellant contends that the missing record demonstrates that the Department sought termination, not merely on the facts of the case, but on the recommendation of the trial court judge, which resulted in her being denied a fair trial before a neutral and detached judge.

Texas Rule of Appellate Procedure 44.4 provides that a court of appeals must not affirm a judgment if an erroneous action of the trial court prevents the proper presentation of a case to the court of appeals and the trial court can correct that action. *See* TEX. R. APP. P. 44.4(a).  In this issue, appellant relies exclusively on the testimony of Christina Vaughn, a caseworker for the Department of Family and Protective Services, as evidence that a hearing was held in April or May 2019, and as a result of comments made by the trial judge in that hearing, the Department changed its objective from reuniting appellant and her children to terminating appellant's parental rights.  No Reporter's Record of this April or May 2019 hearing was included in the record for us to review.  Appellant alleges it was during this hearing that the Department changed its objective from reunification of the children with appellant to terminating appellant's parental

rights. Appellant emphasizes the following exchange between defense counsel and the Vaughn, during trial, to show that, as a result, she was denied a fair trial before a fair and detached judge:

| | |
|---|---|
| Q [Defense counsel]: | When was the goal changed to termination as to Ms. Jones? |
| A [Vaughn]: | I can't recall the specific date. But it was at one of our court hearings. |
| Q: | Do—what was the basis for that change in goal? |
| A: | The Judge's recommendations. |

*See Markowitz v. Markowitz*, 118 S.W.3d 82, 86-87 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g) ("Parties have a right to a fair and impartial hearing. One of the fundamental components of a fair trial is a neutral and detached judge. A judge should not act as an advocate nor an adversary for any party. To reverse a judgment on the ground of improper conduct or comments of the judge, we must find (1) that judicial impropriety was in fact committed and (2) probable prejudice to the complaining party." (internal citations & quotations omitted)).

However, later in her testimony, Vaughn clarified that the basis for changing the goal from reunification to actual termination of appellant's parental rights was a letter that appellant sent to one of the caregivers of appellant's children. This letter, which was made a part of the record, included several threats of physical violence made by appellant to the caregiver. Because appellant's complaint regarding the record is entirely based on

Vaughn's earlier testimony to support a contention that the trial judge was not fair or detached, Vaughn's subsequent testimony undermines the entire basis for appellant's complaint in this issue. *See id.* at 86-87.

Furthermore, accepting for argument's sake that the judge did make the reported, complained-of comments, appellant admits in her brief that said judge was not the same judge who conducted the trial of this matter. Thus, the accusation of bias had no bearing on the final order in this case.

Accordingly, we cannot say that appellant has demonstrated that the purported error regarding the record, if any, prevented her from properly presenting her case to this Court. *See* TEX. R. APP. P. 44.4(a). We therefore overrule appellant's first issue.

## II. THE APPOINTMENT OF COUNSEL FOR APPELLANT

In her second issue in both appellate cause numbers, appellant complains that the trial court erred by failing to appoint her counsel for five months after the Department filed petitions seeking termination. Appellant argues that this amounts to a failure to timely advise her of her right to counsel and, thus, constitutes reversible error.

Regarding A.D., in appellate cause number 10-19-00411-CV, the Department filed its original petition on May 1, 2018. Regarding B.S. and J.M., in appellate cause number 10-19-00412-CV, the Department filed its original petition on May 7, 2018. The record reflects that the trial court appointed appellant counsel in both cases on October 16,

2018—a year before the trial in this matter commenced. *See* TEX. FAM. CODE ANN. § 107.013(d) (West 2019).

We recognize that Texas courts have routinely held that the appointment of counsel for an indigent parent more than five months into the case does not violate the parent's due-process rights. *See In re M.J.M.L.*, 31 S.W.3d 347, 353-54 (Tex. App.—San Antonio 2000, pet. denied) (concluding that the appointment of counsel six months after the Department filed its termination petition did not violate section 107.013 of the Family Code, especially considering counsel was appointed over a year before the trial date); *see also In re M.M.*, No. 05-18-00901-CV, 2019 Tex. App. LEXIS 368, at **4-5 (Tex. App.—Dallas Jan. 22, 2019, no pet.) (mem. op.) (concluding that the trial court did not abuse its discretion by appointing an indigent parent counsel six months into the case, after the removal hearing and a subsequent status hearing); *In re B.K.*, No. 10-12-00311-CV, 2012 Tex. App. LEXIS 10730, at **5-6 (Tex. App.—Waco Dec. 27, 2012, no pet.) (mem. op.) (holding that the appointment of counsel fifteen months after the child's removal and slightly less than five months before trial did not violate the parent's due-process rights); *In re C.R.*, No. 09-11-00619-CV, 2012 Tex. App. LEXIS 4303, at **9-11 (Tex. App.—Beaumont 2012, no pet.) (mem. op.) (concluding that the trial court did not abuse its discretion by appointing counsel for a parent three months prior to trial); *In re C.Y.S.*, No. 04-11-00308-CV, 2011 Tex. App. LEXIS 9355, at **9-15 (Tex. App.—San Antonio Nov. 30, 2011, no pet.) (mem. op.) (concluding that the trial court did not abuse its discretion by

appointing counsel ten months after the termination petition was filed and four months before trial).

However, in *In the Interest of S.R.*, this Court held that the failure to appoint counsel for one-third of the time the case was pending constituted harmful error that "probably caused the rendition of an improper judgment." 2019 Tex. App. LEXIS 11277, at *5 (Tex. App.—Waco Dec. 31, 2019, pet. denied) (mem. op.) (citing TEX. R. APP. P. 44.1(a)(1); *In re B.C.*, 592 S.W.3d 133, 137-38 (Tex. 2019)). During this time, appellants "were deprived of the appointment of counsel prior to the adversary hearing, and were subsequently without counsel at the status hearing, the dismissal hearing, and the first permanency hearing conducted by the trial court." *Id.* Moreover, without the benefit of the advice of counsel, appellants testified at the hearings, and the testimony given while unrepresented was used at trial to determine whether or not appellants had completed their service plans and whether termination was in the best interest of the child. *Id.* at *6.

Unlike *In the Interest of S.R.*, where appellants testified at proceedings without the benefit of the advice of counsel and that evidence was used at trial to demonstrate that appellants had failed to complete their service plans and to support a best-interest finding, the evidence is sufficient to support termination of appellant's rights under section 161.001(b)(1)(E) without any reference to statements or evidence from those hearings conducted prior to the appointment of counsel. Therefore, we cannot conclude that appellant was harmed by the trial court's failure to appoint counsel until five months

into the case and a year before trial such that the purported error "probably caused the rendition of an improper judgment." *See* TEX. R. APP. P. 44.1(a)(1); *In re B.C.*, 592 S.W.3d at 137-38; *see also In re S.R.*, 2019 Tex. App. LEXIS 11277, at **5-6. Accordingly, we overrule appellant's second issue.

## III. THE PREDICATE GROUNDS FOR TERMINATION OF APPELLANT'S PARENTAL RIGHTS

In her third, fourth, and fifth issues in both appellate cause numbers, appellant contends that the evidence supporting the predicate grounds for termination—sections 161.001(b)(1)(D), (b)(1)(E), (b)(1)(N), and (b)(1)(O) of the Family Code—is legally and factually insufficient as to A.D., B.S., and J.M. We disagree.

### A. Standard of Review

In an involuntary termination proceeding brought under section 161.001 of the family code, the Department must establish: (1) at least one ground under subsection (1) of section 161.001; and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2019); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a) (West Supp. 2019). Evidence is clear and

convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting the standards for termination and modification).

In evaluating the evidence for legal sufficiency in parental-termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all contrary evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* In other words, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.* We cannot weigh witness-credibility issues that depend on the appearance and demeanor of the witnesses, for that is within the province of the factfinder. *Id.* at 573-74. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations if they are reasonable. *Id.* at 573.

In reviewing for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent committed the predicate ground alleged and that the termination of the parent-child relationship would be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(1); *see In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief in the truth of its finding, then the evidence is factually insufficient. *In re H.R.M.*, 209 S.W.3d at 108.

## B.    Discussion

Termination under subsection 161.001(b)(1)(E) requires clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* § 161.001(b)(1)(E).

To endanger means to expose to loss or injury, to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see also In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). The specific danger to a child's physical or emotional well-being need not be established as an independent proposition, but it may be inferred from parental misconduct. *See Boyd*, 727 S.W.2d at 533.

Under subsection 161.001(b)(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied); *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 83-84 (Tex. App.—Dallas 1995, no writ).

> Additionally, termination under subsection (E) must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parents. [*In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)]; *see* TEX. FAM. CODE ANN. § 161.001([(b)](1)(E). It is not necessary, however, that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533; *J.T.G.*, 121 S.W.3d at 125. The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Boyd*, 727 S.W.2d at 533; *In re R.W.*, 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied).

*In re T.T.F.*, 331 S.W.3d 461, 483 (Tex. App.—Fort Worth 2010, no pet.).

Regarding subsections 161.001(b)(1)(E), appellant contends that the Department failed to present clear and convincing evidence of endangerment. Rather, appellant complains that her parental rights were terminated merely because of her incarceration. To further emphasize her point, appellant directs us to the trial court's decision regarding the fathers of the children—many of whom had criminal histories yet did not have their parental rights terminated. *See C.V. v. Tex. Dep't of Family & Protective Servs.*, 408 S.W.3d 495, 505-06 (Tex. App.—El Paso 2013, no pet.) (rejecting an argument that because one parent's rights were not terminated, neither parent's rights should be terminated); *see also In re K.R.M.*, No. 07-13-00429-CV, 2014 Tex. App. LEXIS 2979, at *6 (Tex. App.—Amarillo

Mar. 17, 2014, no pet.) (mem. op.) ("That one parent may have been afforded another chance to be a parent does not mean both must. . . . [The parent's] own conduct and circumstances are determinative.").

At trial, the Department presented evidence of appellant's extensive criminal history. Appellant admitted that she is currently incarcerated. Her current incarceration stems from a conviction for possessing a prohibited item in a correctional facility that resulted in her being placed on community supervision for six years. However, appellant's community supervision was revoked, and she received a five-year prison sentence. Appellant claimed that she would be released in March 2020. This date, however, was only her hearing date before the parole board. Appellant's request for parole had previously been denied in November 2018, and her maximum sentence date is December 26, 2022.

Additionally, appellant further admitted to numerous other arrests, charges, and convictions, including the following: (1) an arrest in April 2016 for aggravated assault with a deadly weapon; (2) eighteen days' incarceration in 2012 for criminal mischief; (3) a guilty plea in 2013 for assault causing bodily injury; (4) charges in July 2013 for burglary of a habitation with intent to commit another felony and criminal trespass that resulted in an eighteen-day sentence corresponding with the criminal-trespass charge; (5) an arrest and fifteen-day stay in jail for criminal mischief; and (6) a sentence of two years' community supervision for abandoning and endangering a child by criminal negligence

that resulted from the child suffering a head injury and a burned foot. Moreover, appellant acknowledged that she has a current charge pending for second-degree sexual assault of a child apparently relating to her relationship with the father of A.D.[1]

A parent's engaging in criminal conduct endangers the emotional well-being of a child because of the parent's resulting incarceration. *See In re R.W.*, 129 S.W.3d at 739 ("[C]onduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child."); *see also Karl v. Tex. Dep't of Protective & Regulatory Servs.*, No. 03-03-00655-CV, 2004 Tex. App. LEXIS 6288, at **3-4 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.). While imprisonment alone is not a basis to terminate a parent's rights, it is an appropriate factor to consider because when a parent is incarcerated, he or she is absent from the child's daily life and unable to provide support to the child, negatively impacting the child's living environment and emotional well-being. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g).

And finally, Vaughn recounted that there were allegations of domestic violence between appellant and A.D.'s father. Furthermore, appellant testified that A.D.'s father was "very aggressive," which supports an inference of domestic violence. Yet, considering the purported physical aggressiveness of J.D.'s father, appellant did not keep

---

[1] The evidence adduced at trial suggested that A.D.'s father was fifteen or sixteen years old and that appellant was twenty-five years old when A.D. was born.

the children away from J.D.'s father. Moreover, the Department used the letter appellant wrote to the caregiver detailing various threats of physical violence to support an inference that appellant lacked self-control and was prone to violent behaviors. In further support of this inference is appellant's criminal history, which, as shown above, includes several convictions for assaultive offenses.

Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment. *See In re B.J.B.*, 546 S.W.2d 674, 677 (Tex. App.—Texarkana 1977, writ ref'd n.r.e.); *see also Sylvia M. v. Dallas County Child Welfare Unit*, 771 S.W.2d 198, 201-04 (Tex. App.—Dallas 1989, no writ) (considering "volatile and chaotic" marriage, altercation during pregnancy, and mother's repeated reconciliation with abusive spouse). Abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child. *In re K.A.S.*, 131 S.W.3d at 222; *see Ziegler v. Tarrant County Child Welfare Unit*, 680 S.W.2d 674, 678 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.) (noting that violent or abusive conduct by someone within the household is an environment that endangers children).

Considering the evidence in the light most favorable to the factfinder's findings and considering the evidence as a whole, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that appellant engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical

or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *see also In re J.P.B.*, 180 S.W.3d at 573; *In re H.R.M.*, 209 S.W.3d at 108. This is not the case that appellant's parental rights were terminated solely because of her current incarceration. Accordingly, we hold that the evidence is legally and factually sufficient to support the trial court's conclusions that appellant's parental rights to A.D., B.S., and J.M. should be terminated under subsection 161.001(b)(1)(E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *see also In re J.P.B.*, 180 S.W.3d at 573; *In re H.R.M.*, 209 S.W.3d at 108.

Because we have found that the evidence was legally- and factually-sufficient as to at least one predicate act, we do not address appellant's complaints regarding subsections 161.001(b)(1)(D), (b)(1)(N), or (b)(1)(O). *See* TEX. R. APP. P. 47.1.; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."). We overrule appellant's third, fourth, and fifth issues.

## IV.    BEST INTEREST OF THE CHILDREN

In her sixth, seventh, and eighth issues in both appellate cause numbers, appellant argues that the evidence supporting the trial court's best-interest finding as to A.D., B.S., and J.M. is not supported by legally- and factually-sufficient evidence. Once again, we disagree.

### A.    Applicable Law

In a parental-rights-termination case, the best interest of the child is assessed using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). These factors are: (1) the child's wishes; (2) the child's emotional or physical needs now and in the future; (3) emotional or physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) programs available to help those parties; (6) plans for the child by the parties seeking custody; (7) the stability of the proposed placement; (8) the acts or omissions of the parent that indicate that the existing parent-child relationship is not proper; and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The Department need not prove all nine *Holley* factors as a "condition precedent" to termination; the absence of some factors does not bar the factfinder from finding that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. And while no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.— Waco 2001, no pet).

## B.     Discussion

The record reflects that, at the time of trial, A.D., B.S., and J.M. were two years old, seven years old, and five years old, respectively. An alternative response investigation supervisor for the Department, testified that, prior to removal, appellant had left the

children with a seventeen-year-old cousin of A.D.'s father. Later, when the seventeen-year-old cousin was unable to care for the children, all the children except for A.D. were placed with the caregiver. At the time of removal, all the children except for A.D. were with caregiver. The seventeen-year-old cousin was also unable to care for A.D. and left him at the police station when he was just seven months old.

According to the court-appointed special advocate ("CASA"), A.D. is currently placed with his paternal great aunt with whom he has a strong bond. The CASA also testified that A.D. is very well cared for in his current placement and is thriving.

B.S. and J.M. are currently placed with the caregiver and are also doing well. After receiving ADHD medication, B.S. acts like a "little adult." The CASA noted that B.S. is concerned about appellant coming back into the picture. In fact, Vaughn testified that the children expressed that they do not want to be with appellant. B.S.'s anxiety about possibly leaving the caregiver's home has manifested itself in the form of extensive bed wetting. The CASA recalled that B.S. told her that she wants Hamilton to adopt her.

J.M. has trouble communicating orally and needs speech and occupational therapy twice a week for an hour. The caregiver has taken J.M. to his therapy appointments, and as a result of the therapy, the CASA has seen substantial improvements in J.M., though he has some scholastic troubles that warrant further monitoring.

The CASA further testified that appellant did not take care of medical and dental issues for the children. At the time of removal, J.M. was behind on his shots and needed

dental work due to neglect. Additionally, the CASA was concerned about appellant's habit of leaving the children with others. The children never knew if appellant was coming back to them. The CASA opined that this is psychologically harmful to the children. Additionally, the children told the CASA that appellant "was abusive as far as physically hitting them and yelling at them."

Vaughn emphasized that appellant's parental rights to the children should be terminated and that the current placements for the children are in their best interest. The CASA agreed that termination of appellant's parental rights was in the best interest of the children so that they could achieve some stability in their lives.

Despite appellant's testimony to the contrary, Vaughn testified that appellant has not tried to contact the children while in jail, nor has she provided the children any support, financial or otherwise. In fact, appellant has had no contact with B.S. or J.M. in a year and a half. And because of her incarceration throughout most of this case, appellant has had one supervised visitation with A.D., which resulted in A.D. crying the entire time. The CASA characterized the encounter as a "very disruptive visit." Regarding this visit, the CASA also noted that appellant was told to visit alone. However, appellant disregarded this instruction and brought another young person who tried to participate in the visit as well.

In her testimony, appellant acknowledged that, at the time of removal, she and the children were living in an apartment with others. This apartment was described as dirty

and not having the utilities connected. Indeed, the alternative response investigation supervisor for the Department stated that the allegations at the time of removal were as such:

> At that time, there was allegations of neglectful supervision and sexual abuse allegations, neglectful supervision for the children, for all five children with concerns of no running water and no electricity in the home is what the allegation stated on the report, and that there was concerns of that there was a sexual relationship between Ms. Jones and a 16 year old child, [A.D.'s father].

Appellant also admitted that she has been homeless at various periods of time. In all, appellant has seven children, though only three are the subject of this appeal. Furthermore, appellant does not know where any of the children are. However, she claims to know who is taking care of them.

When asked about her future plans to care for the children, appellant provided no response. Regarding her living situation, appellant stated: "Of course. I have that all together. But far as job wise, I want to do a few things. . . . But far as job wise, I'm working on that now." On cross-examination, appellant stated that she plans to live with her aunt, Beverly Glaze, whenever she is released from jail.

Finally, as stated above, appellant is currently incarcerated with a maximum sentence set to expire on December 26, 2022. Appellant hopes to be released on parole in March 2020, though she has been denied parole previously in November 2018. Moreover, appellant also has a pending sexual-assault-of-a-child charge that is a second-degree felony with a sentencing range of two to twenty years in prison. Additionally, there was

testimony that appellant allowed one of her other children to suffer a head injury and a burned foot due to her criminal negligence and that appellant engaged in violent behaviors and made threats of violence, as well as allowed the children to be around J.M.'s father, whom appellant described a "very aggressive."

Based on our review of the record, we find that the above-mentioned evidence supports numerous *Holley* factors. *See* 544 S.W.2d at 371-72. We therefore conclude that the evidence presented was legally and factually sufficient for a factfinder to reasonably form a firm belief or conviction that termination of appellant's parental rights was in the best interest of A.D., B.S., and J.M. *See In re J.P.B.*, 180 S.W.3d at 573; *see also In re H.R.M.*, 209 S.W.3d at 108; *In re C.H.*, 89 S.W.3d at 28. Accordingly, we overrule appellant's sixth, seventh, and eighth issues.

## V. CONCLUSION

Based on the foregoing, we affirm the trial court's orders terminating appellant's parental rights to A.D., B.S., and J.M. in appellate cause numbers 10-19-00411-CV and 10-19-00412-CV.

JOHN E. NEILL
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Neill
(Chief Justice Gray concurring)
Affirmed
Opinion delivered and filed August 10, 2020
[CV06]

