COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-06-321-CV

 

 

IN THE INTEREST OF O.L.A., K.B., AND
P.B., III                                       

                                                                                                        

 

                                              ------------

 

             FROM
THE 16TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.                   
Introduction








This is a parental rights termination case.  Appellant Jamilia B. challenges the judgment terminating
her parental rights to two of her three childrenCK.B.
and P.B.[2]  First, Appellant complains that the evidence
is legally and factually insufficient to support the jury=s findings that she engaged in conduct
or knowingly placed the children with persons who engaged in conduct that
endangered the physical or emotional well‑being of the children.  She also challenges the legal and factual
sufficiency of the jury=s
finding that she failed to comply with her court-ordered service plan.  In her second point, Appellant complains that
she was denied effective assistance of counsel because her trial counsel
withdrew from the case before filing any postjudgment procedural protections or
reliefCincluding
failing to file a motion for new trial or statement of points.  In her third point, Appellant complains that
her due process rights were violated when the trial court permitted her trial
counsel to withdraw before filing a motion for new trial or statement of
points.  Finally, Appellant complains
that her due process rights were further violated by section 263.405(i) of the
Texas Family Code requiring a statement of points to be filed within fifteen
days of the trial court=s
final order, when an appellate record was not available to appellant counsel at
that time.  We affirm. 

II.                
Factual and Procedural Background

O.L.A. is the biological child of Appellant and
Andre A.  K.B. and P.B.Cthe younger of the three children to
whom the jury terminated Appellant=s
parental rightsCare the
biological children of Appellant and Phillip B.[3]           








In 2001, Kansas child protective services removed
O.L.A. from Appellant=s
home after her husband, Phillip B., admitted chasing the two-year-old with a
curtain rod and beating the child with the rod as punishment for wetting his
pants.  Phillip B. was subsequently
convicted of injury to a child, served thirty days in jail, and was placed on
probation for two years.  

On the day of the beating, Appellant had left
O.L.A. with Phillip B. so she could go wash laundry.  When she returned, Phillip B. had already put
O.L.A. to bed.  The next morning, despite
O.L.A. having a band-aid above his eye, Appellant took O.L.A. to daycare
without looking to see whether and to what extent O.L.A. was injured.  The daycare later called Appellant  and informed her that O.L.A. had been taken
to the emergency room because of the injury. Kansas officials removed O.L.A.
from Appellant=s home,
but returned him after Phillip B. and Appellant completed court-ordered
parenting classes and counseling sessions. 
The family left Kansas and moved to Texas later that same year.  








Appellant admits that while she lived in Texas,
she frequently left all three of her children alone with Phillip B.  Also while in Texas, additional allegations
of child abuse arose.  In 2003, the Texas
Department of Family and Protective Services (ATDFPS@) received a referral from Denton
school officials reporting that O.L.A. had a Abusted@ lip that was Aswollen
and bloody.@  Although Appellant and Phillip B. gave
differing accounts of the events surrounding the injury, O.L.A. told the TDFPS
investigator that Phillip B. shoved him into a wall the previous night while he
was brushing his teeth.  Appellant originally
told TDFPS that O.L.A. Abusted@ his lip in a fall while Appellant was
in another room, but she later stated that the injury occurred while O.L.A. was
Ahorseplaying@
in the family=s
home.  Appellant testified that she did
not initially look to see how severely O.L.A. had been injured. 

In 2005, the agency received yet another referral
on O.L.A. after the child came to school with a black eye.  During the course of their investigation,
TDFPS officials observed numerous bruises, scratches, and scars all over the
child=s
body.  O.L.A. told investigators that his
black eye occurred when Phillip B. punched him in the eye for not sharing toys
with his sister, and that the scratches on his back came from Appellant=s fingernails.  O.L.A. also said that Phillip B. would often
pinch his ears and hit him with a wooden boat oar as punishment. 

Appellant testified that she first saw the black
eye when she took O.L.A. to school and a teacher asked what had happened.  She further testified that she asked O.L.A.
about the black eye, but he did not know how he got it.  She testified she did not see any of the
other marks and bruises at this time, but later testified she had seen most of
the marks on previous occasions. 








When asked about the boat oar, Appellant testified
that she was aware of the boat oar.  She
stated that Phillip B. had brought it home and told her he was going to use it
to Athreaten@
O.L.A. when he misbehaved.  Through time,
the boat oar transformed into a paddle. 
Appellant testified that she remembers the boat oar being brought home
and that later she remembered the boat oar being wrapped in tape.  Although Appellant testified that the purpose
of the boat oar was to scare O.L.A., she also testified that she was concerned
that Phillip B. used the boat oar to physically punish both O.L.A. and
K.B.  When TDFPS discovered the boat oar,
it had stains on it.  The stains tested
positive as blood.   








During their investigation into O.L.A.=s injuries, a detective and protective
services= workers
learned that two other children resided in Appellant=s
home. The detective testified that when they were at Appellant=s home investigating, Appellant would
fluctuate Abetween
out of control shouting and making absolutely no sense, to sitting calmly for
just a second.  But as soon as
[investigators] tried to broach the subject [of O.L.A.=s  injuries] . . . she start[ed]
shouting again.@  At this time, Appellant denied any knowledge
of any injury to O.L.A.  When case
workers accompanied O.L.A. into the house, Appellant did not examine him or
look for his injuries.  At trial,
however, Appellant admitted she had seen all the injuries before, but gave
varying and benign explanations for their cause. 

Investigators also reported apparent signs of
domestic abuse.  Specifically,
investigators observed numerous holes in several of the interior doors of the
home which Appellant admitted were caused by Phillip B. kicking the doors when
he became angry.  Appellant testified
that she was not at home when the damage occurred, but the children were.  She also testified that upon seeing the
damage to the house, she feared for herself and her children. 

At the conclusion of its investigation, TDFPS
removed the children from the home and eventually filed this termination
proceeding.   In compliance with the
trial court=s interim
order prescribing the manner by which Appellant could possibly have the
children returned to her, Appellant was referred to Dr. Mark Foster for a
psychological evaluation.  Foster
concluded, among other findings, that Appellant focuses on herself Ato an unhealthy extent@ and has great difficulty appreciating
how her behavior impacts her children. 
Furthermore, Foster concluded that Appellant had a distorted Aperception of the world@, had tendencies to Aminimize or distort or deny@ facts unfavorable to her, and met the
psychological profile of a person with a tendency to Aregress[]
into antisocial behaviors@
such as lying.  








Appellant attended counseling from a number of
individual and group based parent-counseling programs.  One of these counselors testified that
Appellant failed to acknowledge that abuse had occurred in her home and that
this denial would negatively affect Appellant=s
ability to provide a safe home for any of the children.  This counselor terminated the counseling
sessions due to Appellant=s
lack of progress.  Appellant told another
counselor that she was shocked abuse had occurred and she was unaware of it
happening in her home. Appellant also told counselors that she was separated
from Phillip B. during this time period, but admitted at trial that she had
told counselors that because it was her plan to do so in the future.   

At the conclusions of Appellant=s trial, the jury returned a verdict
specifically finding that Appellant had (1) knowingly placed or knowingly
allowed all three children to remain in conditions or surroundings that endangered
their physical or emotional well-being; (2) Appellant engaged in conduct that
endangered the physical or emotional well-being of the children; (3) Appellant
failed to comply with the provisions of the court-ordered plan for the return
of her children; and (4) termination of Appellant=s
parental rights would be in the best interest of the children.  Appellant appeals from the judgment on the
verdict. 

 








III.              
Discussion

A.                
Legal and Factual Sufficiency of Termination

In her first point, Appellant contends that the
evidence is legally and factually insufficient to support the jury=s verdict terminating her parental
rights to K.B. and P.B. under family code sections 161.001(1)(D),(E) and
(O).  Appellant does not challenge the
legal or factual sufficiency that termination was in the best interest of
either child. 

1.               
Burden of Proof and Standard
of Review








A parent=s rights to Athe
companionship, care, custody, and management@ of his or her children are constitutional interests Afar more precious than any property right.@  Santosky v. Kramer, 455
U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d
534, 547 (Tex. 2003).  AWhile parental rights are of constitutional magnitude, they are not
absolute.  Just as it is imperative for
courts to recognize the constitutional underpinnings of the parent-child
relationship, it is also essential that emotional and physical interests of the
child not be sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d
17, 26 (Tex. 2002);  In re S.B.,
207 S.W.3d 877, 884 (Tex. App.CFort Worth 2006, no pet.). In a termination case, the State seeks not
just to limit parental rights but to end them permanentlyCto divest the parent and child of all legal rights, privileges,
duties, and powers normally existing between them, except for the child=s right to inherit.  TEX. FAM. CODE ANN. ' 161.206(b) (Vernon Supp. 2007); Holick v. Smith, 685
S.W.2d 18, 20 (Tex. 1985); S.B., 207 S.W.3d at 884.  We strictly scrutinize termination
proceedings and strictly construe involuntary termination statutes in favor of
the parent.  Holick, 685 S.W.2d at
20-21; S.B., 207 S.W.3d at 884; In re E.S.S., 131 S.W.3d 632, 636
(Tex. App.CFort Worth
2004, no pet.).

Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing
evidence.  TEX. FAM. CODE ANN. '' 161.001, 161.206(a); In re J.F.C., 96 S.W.3d 256, 263
(Tex. 2002); S.B., 207 S.W.3d at 884. 
This intermediate standard falls between the preponderance standard of
ordinary civil proceedings and the reasonable doubt standard of criminal
proceedings.  In re G.M., 596
S.W.2d 846, 847 (Tex. 1980); S.B., 207 S.W.3d at 884; In re K.W.,
138 S.W.3d 420, 425 (Tex. App.CFort Worth 2004, pet. denied). 
It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex.
Fam. Code Ann. ' 101.007
(Vernon 2002); S.B., 207 S.W.3d at 884. 








The higher burden of proof in
termination cases elevates the appellate standard of legal sufficiency review.  J.F.C., 96 S.W.3d at 265; S.B., 207
S.W.3d at 884.  The traditional no-evidence
standard does not adequately protect the parents= constitutional interests.  J.F.C.,
96 S.W.3d at 265; S.B., 207 S.W.3d at 884.  In reviewing the evidence for legal
sufficiency in parental termination cases, we must determine whether the
evidence is such that a fact-finder could reasonably form a firm belief or
conviction that the grounds for termination were proven.  J.F.C., 96 S.W.3d at 265-66; S.B., 207
S.W.3d at 884.  We must review all the
evidence in the light most favorable to the finding and judgment.  J.F.C., 96 S.W.3d at 266; S.B., 207
S.W.3d at 884.  This means that we must
assume that the fact-finder resolved any disputed facts in favor of its finding
if a reasonable fact-finder could have done so. 
J.F.C., 96 S.W.3d at 266; S.B., 207 S.W.3d at 884.  We must also disregard all evidence that a
reasonable fact-finder could have disbelieved. 
J.F.C., 96 S.W.3d at 266; S.B., 207 S.W.3d at 885.  We must consider, however, undisputed evidence
even if it is contrary to the finding.  J.F.C.,
96 S.W.3d at 266; S.B., 207 S.W.3d at 885.  That is, we must consider evidence favorable
to termination if a reasonable fact-finder could, and disregard contrary
evidence unless a reasonable fact-finder could not.  City of Keller v. Wilson, 168 S.W.3d
802, 827 (Tex. 2005); S.B., 207 S.W.3d at 885. 








This higher burden of proof
also elevates the appellate standard of factual sufficiency review.  C.H., 89 S.W.3d at 25; S.B., 207
S.W.3d at 885.  A[A] finding that must be based on clear and convincing evidence cannot
be viewed on appeal the same as one that may be sustained on a mere
preponderance.@  C.H., 89 S.W.3d at 25; S.B., 207
S.W.3d at 885.  In considering whether
the evidence of termination rises to the level of being clear and convincing,
we must determine whether the evidence is such that a fact-finder could
reasonably form a firm belief or conviction that the grounds for termination
were proven.  C.H., 89 S.W.3d at
25; S.B., 207 S.W.3d at 885.  Our
inquiry here is whether, on the entire record, a fact-finder could reasonably
form a firm conviction or belief that the parent violated one of the conduct
provisions of section 161.001(1) and that termination of the parent=s parental rights would be in the best interest of the child.  C.H., 89 S.W.3d at 28; S.B., 207
S.W.3d at 885. 

If, in light of the entire
record, the disputed evidence that a reasonable fact-finder could not have
credited in favor of the finding is so significant that a fact-finder could not
reasonably have formed a firm belief or conviction in the truth of its finding,
then the evidence is factually insufficient. 
In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  If we reverse on factual sufficiency grounds,
then we must detail in our opinion why we have concluded that a reasonable
fact-finder could not have credited disputed evidence in favor of its
finding.  J.F.C., 96 S.W.3d at
266-67.








2.               
Endangerment and Course of
Conduct

In part of her first point,
Appellant complains that there is legally and factually insufficient evidence
supporting the jury=s findings
that she  knowingly placed or knowingly
allowed K.B. and P.B. to remain in conditions or surroundings that endangered
their physical or emotional well‑being and that she engaged in conduct or
knowingly placed them with persons who engaged in conduct that endangered their
physical or emotional well‑being.  See
Tex. Fam. Code Ann. ' 161.001(1)(D), (E) (Vernon Supp. 2007).  We disagree. 









Endangerment means to expose
to loss or injury, to jeopardize.  Texas
Dept. of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987); see also
In re M.C., 917 S.W.2d 268, 269 (Tex. 1996). Under subsection (D), it is
necessary to examine evidence related to the environment of the child to
determine if the environment was the source of endangerment to the child=s physical or emotional well-being. 
In re D.T., 34 S.W.3d 625, 633 (Tex. App.CFort Worth 2000, pet. denied). 
Conduct of a parent in the home can create an environment that endangers
the physical and emotional well‑being of a child.  In re W.S., 899 S.W.2d 772, 776
(Tex. App.CFort Worth
1995, no writ).  For example, abusive or
violent conduct by a parent or other resident of a child=s home may produce an environment that endangers the physical or
emotional well‑being of a child.  See
id. at 776-77; Ziegler v. Tarrant County Child Welfare Unit,
680 S.W.2d 674, 678 (Tex. App.CFort Worth 1984, writ ref=d n.r.e.). 

Under subsection (E), the
relevant inquiry is whether evidence exists that the endangerment of the child=s physical well-being was the direct result of the parent=s conduct, including acts, omissions, or failures to act.  In re R.D., 955 S.W.2d 364, 368 (Tex.
App.CSan Antonio 1997, pet. denied); Dupree v. Tex. Dep=t of Protective &
Regulatory Servs., 907 S.W.2d 81, 83-84 (Tex. App.CDallas 1995, no writ). 
Additionally, termination under section 161.001(1)(E) must be based on
more than a single act or omission; a voluntary, deliberate, and conscious
course of conduct by the parent is required. 
Tex. Fam. Code Ann. ' 161.001(1)(E); D.T., 34 S.W.3d at 634; In re K.M.M.,
993 S.W.2d 225, 228 (Tex. App.CEastland 1999, no pet.).       Under
either subsection (D) or (E), it is not necessary that the parent=s conduct be directed at the child or that the child actually suffer
injury.  Boyd, 727 S.W.2d at
533.   








Because the evidence
concerning these two statutory grounds for termination is interrelated, we
consolidate our examination of it.  In
re J.T.G, 121 S.W.3d 117, 126 (Tex. App.CFort Worth 2003, no pet.); 
In re B.R., 822 S.W.2d 103, 106 (Tex. App.CTyler 1991, writ denied) (recognizing the link between a parent=s conduct and a child=s conditions and surroundings). 
The record contains the following evidence of subsection (D)
environmental endangerment and subsection (E) course of conduct endangerment of
the physical or emotional well-being of the children.








The evidence shows Appellant
has a history of leaving all three children with Phillip B. and that she
continually failed to investigate or be aware of injuries to O.L.A.  In doing so, Appellant continually allowed
all three children to remain in conditions and surroundings that endangered
both their physical and emotional well-being, and also placed them with a
person who engaged in conduct that endangered both their physical and emotional
well-being.  Appellant left all three
children, including K.B. and P.B., with Phillip B. on numerous occasions even
though she knew that he had, during fits of anger, kicked holes in the walls
and doors.  Appellant admitted that
Phillip B.=s temper
frightened her to a degree that she feared for both herself and the
children.  Appellant was also aware that
Phillip B. had brought home a boat oar that she believed he might be using to
physically punish both O.L.A. and K.B. 
She even testified that she had seen the boat oar=s transformationCfrom a boat
oar to a taped up paddle.  There is
evidence that blood stains were clearly on the boat oar.  She was aware of Phillip B.=s past conviction for injury to a child.  She also demonstrated a continual pattern of
ignoring or failing to investigate multiple injuries to O.L.A.Cinjuries that occurred while he was left with Phillip B.Cdespite the equally disturbing pattern that people outside the home
quickly recognized the injuries as signs of child abuse.  

Furthermore, both
psychologists and counselors alike testified that Appellant repeatedly denied
or failed to acknowledge that abuse was occurring in her home.  Even when she did admit that Phillip B. had
physically abused O.L.A., she stated she was Ashocked@ to learn it
was occurring.  Both psychologists and
counselors testified that this pattern of denial is Appellant=s proclivity and created a dangerous environment to all three children=s physical and emotional well-being.

We have carefully reviewed
the entire record.  Looking at all the
evidence in the light most favorable to the jury=s finding, giving due consideration to evidence that the fact finder
could reasonably have found to be clear and convincing, we hold that a
reasonable trier of fact could have formed a firm belief or conviction that
Appellant knowingly placed or knowingly allowed the children to remain in
conditions or surroundings that endangered their physical or emotional well‑being,
and that she engaged in conduct or knowingly placed the children with persons
who engaged in conduct that endangered the children=s physical or emotional well‑being.  








Further, in light of the
entire record, we hold that there is no evidence so significant that a
fact-finder could not reasonably have formed a firm belief or conviction that
Appellant knowingly placed or knowingly allowed the children to remain in
conditions or surroundings that endangered their physical or emotional well‑being
and that she engaged in conduct or knowingly placed the children with persons
who engaged in conduct that endangered the children=s physical or emotional well‑being.  In sum, we hold there is legally and
factually sufficient evidence to support the jury=s verdict. We overrule this part of Appellant=s first point.  

3.                 
Court Ordered Service Plan

In the remaining part of her first point Appellant
challenges the legal and factual sufficiency of the evidence supporting the
jury=s finding
that Appellant failed to comply with the provisions of a court order that
specifically established the actions necessary for Appellant to be reunited
with K.B. and P.B.  See
Tex. Fam. Code Ann. ' 161.001(1)(O).


When determining the
sufficiency of the evidence in parental termination cases, our inquiry is
simply whether, on the entire record, a fact-finder could reasonably form a
firm conviction or belief that the parent violated one of the conduct
provisions of section 161.001(1) and that the termination of the parent=s parental rights would be in the best interest of the child.  C.H., 89 S.W.3d at 28; S.B., 207
S.W.3d at 885.  








Because Appellant has not
challenged whether the sufficiency of the evidence would be in K.B. and P.B.=s best interests and because we hold that a reasonable fact-finder
could have formed a firm belief or conviction that Appellant=s parental rights should be terminated under Texas Family Code
sections 161.001(1)(D) and (E), we need not address whether the evidence
also supports termination under section (O). 


B.                
Effective Assistance of Counsel

In her second point, Appellant complains that she
was denied effective assistance of counsel because her trial lawyer failed to
preserve her legal and factual sufficiency points for appeal.  Appellant further complains she was denied
effective assistance of counsel because her trial lawyer withdrew from the case
prior to any meaningful and necessary post-judgment procedural protections or
relief. 

In Texas, indigent parents such as Appellant have
a statutory right to effective assistance of counsel in involuntary parental
rights termination cases.  Tex. Fam. Code Ann. ' '
107.013(a)(1), 263.405(e) (Vernon Supp. 2007); In re M.S., 115 S.W.3d
534, 544 (Tex. 2003).  To establish
ineffective assistance, Appellant must first show that counsel=s performance was deficient.  M.S., 115 S.W.3d at 545.  Second, Appellant must show that the
deficient performance prejudiced her case. 
Id.  








The gist of Appellant=s
complaint is that trial counsel withdrew from representation the day after the
trial court entered its final order, and he was the only one who could be
sufficiently specific in a statement of points or other post-trial motion to
effectively preserve error for appeal as to the legal and factual sufficiency
of the evidence.  The assumption on which
her complaint is based is that the statement of points that her appellate
counsel filed was deficient to preserve error as to legal and factual
sufficiency of the evidence. 

The State concedes that the statement of points
that appellate counsel filed did timely and properly preserve error as to the
legal and factual sufficiency of evidence as to each of the jury=s findings.  We  have
thus addressed those issues on the merits in light of the entire record.  Moreover, even if we determined that trial
counsel=s
performance was deficient in withdrawing without preparing and filing a timely
statement of points with sufficient specificity, Appellant has not set forth
any additional facts, reasons, or arguments not made by appellate counsel that
only her trial counsel could have made. 
Therefore, she cannot demonstrate that any deficient performance of
trial counsel in withdrawing and not filing a statement of points prejudiced
her case.  We overrule her second issue.   

 

 








C.                
Due Process and Section 263.405(i) of the Texas Family
Code

In her third and fourth points Appellant complains
that her due process rights were violated because section 263.405(i) of the
family code bars this court from considering any issues not specifically
presented to the trial court in a timely filed statement of points.  Further, Appellant complains that such a
procedure arises to the level of fundamental error and can be raised for the
first time on appeal.  

Because a timely statement of points was filed
listing the issues raised on appeal, we need not consider these points.  

IV.             
Conclusion

Having overruled Appellant=s
first point in part and declined to address her first point in part, having
overruled Appellant=s second
point, and having not addressed Appellant=s
third and fourth points, we affirm the trial court=s
judgment.              

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:       DAUPHINOT, GARDNER, and WALKER, JJ.

 

DELIVERED:  March 13, 2008











[1]See Tex. R. App. P. 47.4.





[2]Appellant
does not challenge the termination of her parental rights to her oldest son,
O.L.A.  Appellant=s
rights to O.L.A. were also terminated, and he was placed in the care of his
biological father. 





[3]During
the pendency of this case, Phillip B. was found guilty of injury to a childCO.L.A.  Phillip B. is not a party to this appeal.