

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-06-321-CV

IN THE INTEREST OF O.L.A., K.B., AND P.B., III

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I.      Introduction

This is a parental rights termination case.  Appellant Jamilia B. challenges

the judgment terminating her parental rights to two of her three children—K.B.

and P.B.[2]  First, Appellant complains that the evidence is legally and factually

insufficient to support the jury's findings that she engaged in conduct or

------------

[1]*See* TEX. R. APP. P. 47.4.

[2]Appellant does not challenge the termination of her parental rights to her oldest son, O.L.A.  Appellant's rights to O.L.A. were also terminated, and he was placed in the care of his biological father.

knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. She also challenges the legal and factual sufficiency of the jury's finding that she failed to comply with her court-ordered service plan. In her second point, Appellant complains that she was denied effective assistance of counsel because her trial counsel withdrew from the case before filing any postjudgment procedural protections or relief—including failing to file a motion for new trial or statement of points. In her third point, Appellant complains that her due process rights were violated when the trial court permitted her trial counsel to withdraw before filing a motion for new trial or statement of points. Finally, Appellant complains that her due process rights were further violated by section 263.405(i) of the Texas Family Code requiring a statement of points to be filed within fifteen days of the trial court's final order, when an appellate record was not available to appellant counsel at that time. We affirm.

## II.     Factual and Procedural Background

O.L.A. is the biological child of Appellant and Andre A. K.B. and P.B.—the younger of the three children to whom the jury terminated Appellant's parental rights—are the biological children of Appellant and Phillip B.[3]

---

[3]During the pendency of this case, Phillip B. was found guilty of injury to a child—O.L.A. Phillip B. is not a party to this appeal.

2

In 2001, Kansas child protective services removed O.L.A. from Appellant's home after her husband, Phillip B., admitted chasing the two-year-old with a curtain rod and beating the child with the rod as punishment for wetting his pants. Phillip B. was subsequently convicted of injury to a child, served thirty days in jail, and was placed on probation for two years.

On the day of the beating, Appellant had left O.L.A. with Phillip B. so she could go wash laundry. When she returned, Phillip B. had already put O.L.A. to bed. The next morning, despite O.L.A. having a band-aid above his eye, Appellant took O.L.A. to daycare without looking to see whether and to what extent O.L.A. was injured. The daycare later called Appellant and informed her that O.L.A. had been taken to the emergency room because of the injury. Kansas officials removed O.L.A. from Appellant's home, but returned him after Phillip B. and Appellant completed court-ordered parenting classes and counseling sessions. The family left Kansas and moved to Texas later that same year.

Appellant admits that while she lived in Texas, she frequently left all three of her children alone with Phillip B. Also while in Texas, additional allegations of child abuse arose. In 2003, the Texas Department of Family and Protective Services ("TDFPS") received a referral from Denton school officials reporting that O.L.A. had a "busted" lip that was "swollen and bloody." Although

3

Appellant and Phillip B. gave differing accounts of the events surrounding the injury, O.L.A. told the TDFPS investigator that Phillip B. shoved him into a wall the previous night while he was brushing his teeth. Appellant originally told TDFPS that O.L.A. "busted" his lip in a fall while Appellant was in another room, but she later stated that the injury occurred while O.L.A. was "horseplaying" in the family's home. Appellant testified that she did not initially look to see how severely O.L.A. had been injured.

In 2005, the agency received yet another referral on O.L.A. after the child came to school with a black eye. During the course of their investigation, TDFPS officials observed numerous bruises, scratches, and scars all over the child's body. O.L.A. told investigators that his black eye occurred when Phillip B. punched him in the eye for not sharing toys with his sister, and that the scratches on his back came from Appellant's fingernails. O.L.A. also said that Phillip B. would often pinch his ears and hit him with a wooden boat oar as punishment.

Appellant testified that she first saw the black eye when she took O.L.A. to school and a teacher asked what had happened. She further testified that she asked O.L.A. about the black eye, but he did not know how he got it. She testified she did not see any of the other marks and bruises at this time, but later testified she had seen most of the marks on previous occasions.

4

When asked about the boat oar, Appellant testified that she was aware of the boat oar. She stated that Phillip B. had brought it home and told her he was going to use it to "threaten" O.L.A. when he misbehaved. Through time, the boat oar transformed into a paddle. Appellant testified that she remembers the boat oar being brought home and that later she remembered the boat oar being wrapped in tape. Although Appellant testified that the purpose of the boat oar was to scare O.L.A., she also testified that she was concerned that Phillip B. used the boat oar to physically punish both O.L.A. and K.B. When TDFPS discovered the boat oar, it had stains on it. The stains tested positive as blood.

During their investigation into O.L.A.'s injuries, a detective and protective services' workers learned that two other children resided in Appellant's home. The detective testified that when they were at Appellant's home investigating, Appellant would fluctuate "between out of control shouting and making absolutely no sense, to sitting calmly for just a second. But as soon as [investigators] tried to broach the subject [of O.L.A.'s injuries] . . . she start[ed] shouting again." At this time, Appellant denied any knowledge of any injury to O.L.A. When case workers accompanied O.L.A. into the house, Appellant did not examine him or look for his injuries. At trial, however, Appellant admitted

5

she had seen all the injuries before, but gave varying and benign explanations for their cause.

Investigators also reported apparent signs of domestic abuse. Specifically, investigators observed numerous holes in several of the interior doors of the home which Appellant admitted were caused by Phillip B. kicking the doors when he became angry. Appellant testified that she was not at home when the damage occurred, but the children were. She also testified that upon seeing the damage to the house, she feared for herself and her children.

At the conclusion of its investigation, TDFPS removed the children from the home and eventually filed this termination proceeding. In compliance with the trial court's interim order prescribing the manner by which Appellant could possibly have the children returned to her, Appellant was referred to Dr. Mark Foster for a psychological evaluation. Foster concluded, among other findings, that Appellant focuses on herself "to an unhealthy extent" and has great difficulty appreciating how her behavior impacts her children. Furthermore, Foster concluded that Appellant had a distorted "perception of the world", had tendencies to "minimize or distort or deny" facts unfavorable to her, and met the psychological profile of a person with a tendency to "regress[] into antisocial behaviors" such as lying.

Appellant attended counseling from a number of individual and group based parent-counseling programs. One of these counselors testified that Appellant failed to acknowledge that abuse had occurred in her home and that this denial would negatively affect Appellant's ability to provide a safe home for any of the children. This counselor terminated the counseling sessions due to Appellant's lack of progress. Appellant told another counselor that she was shocked abuse had occurred and she was unaware of it happening in her home. Appellant also told counselors that she was separated from Phillip B. during this time period, but admitted at trial that she had told counselors that because it was her plan to do so in the future.

At the conclusions of Appellant's trial, the jury returned a verdict specifically finding that Appellant had (1) knowingly placed or knowingly allowed all three children to remain in conditions or surroundings that endangered their physical or emotional well-being; (2) Appellant engaged in conduct that endangered the physical or emotional well-being of the children; (3) Appellant failed to comply with the provisions of the court-ordered plan for the return of her children; and (4) termination of Appellant's parental rights would be in the best interest of the children. Appellant appeals from the judgment on the verdict.

7

**III.     Discussion**

**A.     Legal and Factual Sufficiency of Termination**

In her first point, Appellant contends that the evidence is legally and factually insufficient to support the jury's verdict terminating her parental rights to K.B. and P.B. under family code sections 161.001(1)(D),(E) and (O). Appellant does not challenge the legal or factual sufficiency that termination was in the best interest of either child.

**1.     Burden of Proof and Standard of Review**

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002); *In re S.B.*, 207 S.W.3d 877, 884 (Tex. App.—Fort Worth 2006, no pet.). In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing

8

between them, except for the child's right to inherit. TEX. FAM. CODE ANN. § 161.206(b) (Vernon Supp. 2007); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *S.B.,* 207 S.W.3d at 884. We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20-21; *S.B.,* 207 S.W.3d at 884; *In re E.S.S.*, 131 S.W.3d 632, 636 (Tex. App.—Fort Worth 2004, no pet.).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *S.B.,* 207 S.W.3d at 884. This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *S.B.,* 207 S.W.3d at 884; *In re K.W.*, 138 S.W.3d 420, 425 (Tex. App.—Fort Worth 2004, pet. denied). It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2002); *S.B.,* 207 S.W.3d at 884.

The higher burden of proof in termination cases elevates the appellate standard of legal sufficiency review. *J.F.C.*, 96 S.W.3d at 265; *S.B.,* 207

9

S.W.3d at 884. The traditional no-evidence standard does not adequately protect the parents' constitutional interests. *J.F.C.*, 96 S.W.3d at 265*; S.B.,* 207 S.W.3d at 884. In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction that the grounds for termination were proven. *J.F.C.*, 96 S.W.3d at 265-66; *S.B.,* 207 S.W.3d at 884. We must review all the evidence in the light most favorable to the finding and judgment. *J.F.C.*, 96 S.W.3d at 266; *S.B.,* 207 S.W.3d at 884. This means that we must assume that the fact-finder resolved any disputed facts in favor of its finding if a reasonable fact-finder could have done so. *J.F.C.*, 96 S.W.3d at 266*; S.B.,* 207 S.W.3d at 884. We must also disregard all evidence that a reasonable fact-finder could have disbelieved. *J.F.C.*, 96 S.W.3d at 266*; S.B.,* 207 S.W.3d at 885. We must consider, however, undisputed evidence even if it is contrary to the finding. *J.F.C.*, 96 S.W.3d at 266; *S.B.,* 207 S.W.3d at 885. That is, we must consider evidence favorable to termination if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *S.B.,* 207 S.W.3d at 885.

This higher burden of proof also elevates the appellate standard of factual sufficiency review. *C.H.*, 89 S.W.3d at 25; *S.B.,* 207 S.W.3d at 885. "[A]

10

finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." *C.H.*, 89 S.W.3d at 25; *S.B.,* 207 S.W.3d at 885. In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction that the grounds for termination were proven. *C.H.*, 89 S.W.3d at 25; *S.B.,* 207 S.W.3d at 885. Our inquiry here is whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that the parent violated one of the conduct provisions of section 161.001(1) and that termination of the parent's parental rights would be in the best interest of the child. *C.H.*, 89 S.W.3d at 28; *S.B.,* 207 S.W.3d at 885.

If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). If we reverse on factual sufficiency grounds, then we must detail in our opinion why we have concluded that a reasonable fact-finder could not have credited disputed evidence in favor of its finding. *J.F.C.*, 96 S.W.3d at 266-67.

11

## 2. Endangerment and Course of Conduct

In part of her first point, Appellant complains that there is legally and factually insufficient evidence supporting the jury's findings that she knowingly placed or knowingly allowed K.B. and P.B. to remain in conditions or surroundings that endangered their physical or emotional well-being and that she engaged in conduct or knowingly placed them with persons who engaged in conduct that endangered their physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E) (Vernon Supp. 2007). We disagree.

Endangerment means to expose to loss or injury, to jeopardize. *Texas Dept. of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987); *see also In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). Under subsection (D), it is necessary to examine evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 633 (Tex. App.—Fort Worth 2000, pet. denied). Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child. *In re W.S.,* 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no writ). For example, abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child. *See id*. at 776-77; *Ziegler v. Tarrant County*

12

*Child Welfare Unit*, 680 S.W.2d 674, 678 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re R.D.*, 955 S.W.2d 364, 368 (Tex. App.—San Antonio 1997, pet. denied); *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 83-84 (Tex. App.—Dallas 1995, no writ). Additionally, termination under section 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. TEX. FAM. CODE ANN. § 161.001(1)(E)*; D.T.*, 34 S.W.3d at 634; *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). Under either subsection (D) or (E), it is not necessary that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533.

Because the evidence concerning these two statutory grounds for termination is interrelated, we consolidate our examination of it. *In re J.T.G,* 121 S.W.3d 117, 126 (Tex. App.—Fort Worth 2003, no pet.); *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied) (recognizing the link between a parent's conduct and a child's conditions and surroundings). The

13

record contains the following evidence of subsection (D) environmental endangerment and subsection (E) course of conduct endangerment of the physical or emotional well-being of the children.

The evidence shows Appellant has a history of leaving all three children with Phillip B. and that she continually failed to investigate or be aware of injuries to O.L.A. In doing so, Appellant continually allowed all three children to remain in conditions and surroundings that endangered both their physical and emotional well-being, and also placed them with a person who engaged in conduct that endangered both their physical and emotional well-being. Appellant left all three children, including K.B. and P.B., with Phillip B. on numerous occasions even though she knew that he had, during fits of anger, kicked holes in the walls and doors. Appellant admitted that Phillip B.'s temper frightened her to a degree that she feared for both herself and the children. Appellant was also aware that Phillip B. had brought home a boat oar that she believed he might be using to physically punish both O.L.A. and K.B. She even testified that she had seen the boat oar's transformation—from a boat oar to a taped up paddle. There is evidence that blood stains were clearly on the boat oar. She was aware of Phillip B.'s past conviction for injury to a child. She also demonstrated a continual pattern of ignoring or failing to investigate multiple injuries to O.L.A.—injuries that occurred while he was left with Phillip

14

B.—despite the equally disturbing pattern that people outside the home quickly recognized the injuries as signs of child abuse.

Furthermore, both psychologists and counselors alike testified that Appellant repeatedly denied or failed to acknowledge that abuse was occurring in her home. Even when she did admit that Phillip B. had physically abused O.L.A., she stated she was "shocked" to learn it was occurring. Both psychologists and counselors testified that this pattern of denial is Appellant's proclivity and created a dangerous environment to all three children's physical and emotional well-being.

We have carefully reviewed the entire record. Looking at all the evidence in the light most favorable to the jury's finding, giving due consideration to evidence that the fact finder could reasonably have found to be clear and convincing, we hold that a reasonable trier of fact could have formed a firm belief or conviction that Appellant knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, and that she engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being.

Further, in light of the entire record, we hold that there is no evidence so significant that a fact-finder could not reasonably have formed a firm belief or

conviction that Appellant knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being and that she engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being.  In sum, we hold there is legally and factually sufficient evidence to support the jury's verdict. We overrule this part of Appellant's first point.

### 3.    Court Ordered Service Plan

In the remaining part of her first point Appellant challenges the legal and factual sufficiency of the evidence supporting the jury's finding that Appellant failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to be reunited with K.B. and P.B.  *See* TEX. FAM. CODE ANN. § 161.001(1)(O).

When determining the sufficiency of the evidence in parental termination cases, our inquiry is simply whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that the parent violated *one* of the conduct provisions of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child.  *C.H.*, 89 S.W.3d at 28; *S.B.,* 207 S.W.3d at 885.

16

Because Appellant has not challenged whether the sufficiency of the evidence would be in K.B. and P.B.'s best interests and because we hold that a reasonable fact-finder could have formed a firm belief or conviction that Appellant's parental rights should be terminated under Texas Family Code sections 161.001(1)(D) and (E), we need not address whether the evidence also supports termination under section (O).

**B.      Effective Assistance of Counsel**

In her second point, Appellant complains that she was denied effective assistance of counsel because her trial lawyer failed to preserve her legal and factual sufficiency points for appeal.  Appellant further complains she was denied effective assistance of counsel because her trial lawyer withdrew from the case prior to any meaningful and necessary post-judgment procedural protections or relief.

In Texas, indigent parents such as Appellant have a statutory right to effective assistance of counsel in involuntary parental rights termination cases. TEX. FAM. CODE ANN. § § 107.013(a)(1), 263.405(e) (Vernon Supp. 2007); *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003).  To establish ineffective assistance, Appellant must first show that counsel's performance was deficient. M.S., 115 S.W.3d at 545.  Second, Appellant must show that the deficient performance prejudiced her case.  *Id.*

17

The gist of Appellant's complaint is that trial counsel withdrew from representation the day after the trial court entered its final order, and he was the only one who could be sufficiently specific in a statement of points or other post-trial motion to effectively preserve error for appeal as to the legal and factual sufficiency of the evidence. The assumption on which her complaint is based is that the statement of points that her appellate counsel filed was deficient to preserve error as to legal and factual sufficiency of the evidence.

The State concedes that the statement of points that appellate counsel filed did timely and properly preserve error as to the legal and factual sufficiency of evidence as to each of the jury's findings. We have thus addressed those issues on the merits in light of the entire record. Moreover, even if we determined that trial counsel's performance was deficient in withdrawing without preparing and filing a timely statement of points with sufficient specificity, Appellant has not set forth any additional facts, reasons, or arguments not made by appellate counsel that only her trial counsel could have made. Therefore, she cannot demonstrate that any deficient performance of trial counsel in withdrawing and not filing a statement of points prejudiced her case. We overrule her second issue.

**C.    Due Process and Section 263.405(i) of the Texas Family Code**

In her third and fourth points Appellant complains that her due process rights were violated because section 263.405(i) of the family code bars this court from considering any issues not specifically presented to the trial court in a timely filed statement of points.  Further, Appellant complains that such a procedure arises to the level of fundamental error and can be raised for the first time on appeal.

Because a timely statement of points was filed listing the issues raised on appeal, we need not consider these points.

**IV.    Conclusion**

Having overruled Appellant's first point in part and declined to address her first point in part, having overruled Appellant's second point, and having not addressed Appellant's third and fourth points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL B:    DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED:  March 13, 2008