NUMBER 13-09-00676-CV


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG 

 


IN THE INTEREST OF A.F., K.F. AND S.F., CHILDREN

 


On appeal from the 24th District Court 

 of Victoria County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yañez and Garza

Memorandum Opinion by Chief Justice Valdez


 Appellant, A.S., appeals from the trial court's termination of her parental rights to her
three children, A.F., K.F., and S.F., and its finding that any appeal of the termination finding
would be frivolous. (1) A.S. filed a statement of points on appeal with the trial court, as
required by statute. See Tex. Fam. Code Ann. § 263.405(b)(2) (Vernon 2008). After a
hearing, the trial court concluded that her appeal was frivolous. By two issues, A.S.
challenges the trial court's termination and frivolousness findings. We affirm. 

I. Factual and Procedural Background

 A.S. is the mother of three children, A.F., K.F., and S.F. At the time of trial, the
children were three, two, and one years old, respectively. All three children have the same
father, who is not a party to this appeal. 

 On or about December 4, 2008, the Texas Department of Family and Protective
Services (the "Department") removed the children from A.S.'s home based on the
Department's investigation of a November 26, 2008 traffic stop involving A.S., two of the
children, and the children's father. J.T. Smith, an investigator for the Victoria County
Sheriff's Department, testified that, during the traffic stop, he found marihuana on the
children's father and placed him under arrest. Investigator Smith then conducted a search
of the vehicle and found a loaded methamphetamine pipe, a digital scale, a small plastic
bag containing a yellowish residue, and four pawn shop receipts.

 Investigator Smith also questioned A.S., who admitted that she had a small plastic
bag in her purse that contained methamphetamine. A.S. also admitted to using
methamphetamine approximately two weeks prior to the traffic stop and that both her and
the children's father were marihuana and methamphetamine users. (2) 

 In addition, Investigator Smith observed two of A.S.'s children in the vehicle, a young
girl and a young boy. Investigator Smith recalled that both were "very dirty" and "very
soiled." The infant boy was wearing a diaper that was saturated with urine and was leaking
onto his clothes. In fact, his shirt was saturated up to his chest. Moreover, the boy's bottle
contained spoiled milk. Investigator Smith did not find any extra diapers or a change of
clothes for the children in the car. The young girl did not have any shoes, and it appeared
that she was drinking coffee that was apparently purchased at a convenience store. Based
on these observations, Investigator Smith did not believe that the children were being
properly cared for by A.S. or the children's father.

 The children were subsequently removed from A.S.'s home, and the trial court
entered temporary orders, which, among other things, required A.S. to pay $50 per month
to support the children while they were in the custody of the Department. A.S. did not
make any of the court-ordered payments. A.S. was also ordered to attend parenting
classes and counseling, neither of which she attended. She also refused to undergo
psychological testing and resisted initial efforts to test her for drugs. However, the
Department was later able to conduct a hair-follicle test, which revealed that A.S. had
recently abused amphetamine and methamphetamine. The only provision of the service
plan that A.S. complied with was the procurement of an identification card.

 Karen Smithey, a case worker for the Department, testified that while the children
were in the Department's custody, A.S. occasionally came to visit. Although A.S. did miss
some appointments, Smithey noted that A.S. was good to the children at the visits. 
However, Smithey further noted that A.S. did not show any parenting skills, which Smithey
believed was attributable to A.S.'s failure to attend parenting classes.

 Smithey also recalled that neither A.S. nor the children's father would provide
information about where they were living. Smithey believed that both parents had been
using drugs throughout the investigation of the case and that returning the children to the
parents would endanger the children's physical and emotional well-being. Thus, Smithey
recommended that the parental rights of both A.S. and the children's father should be
terminated.

 On November 9, 2009, the trial court conducted a final hearing in this matter. On
the morning of the hearing, A.S. called the court to say that she could not attend because
she was ill and was going to the local hospital. (3) Even though A.S. was not present in the
court room, she was represented at the hearing by counsel, and counsel did not move to
continue the hearing. After hearing testimony from several witnesses, the trial court
entered a judgment terminating the parents' parental rights to all three children. In
particular, the trial court concluded that A.S. had violated sections 161.001(1)(D)-(F) and
161.001(1)(O) of the family code. See id. § 161.001(1)(D)-(F), (O) (Vernon Supp. 2009). 
The court further concluded that the termination of A.S.'s parental rights would be in the
best interest of the children. See id. § 161.001(2); see also In re J.L., 163 S.W.3d 79, 84
(Tex. 2005).

 Shortly thereafter, A.S. filed a motion for new trial and a statement of points on
appeal with the trial court. (4) See Tex. Fam. Code Ann. § 263.405(b)(2). After a hearing, the
court entered an order finding A.S.'s points to be frivolous. This appeal followed. See id.
§ 263.405(g) (allowing a parent to appeal a finding of frivolousness). 

II. Standard of Review If a trial court makes a frivolousness finding, an aggrieved parent may appeal;
however, the appeal is initially limited to the frivolousness issue. See id.; see also In re
K.D., 202 S.W.3d 860, 865 (Tex. App.-Fort Worth 2006, no pet.) ("[O]nce the trial court
determined that an appeal is frivolous, the scope of appellate review is statutorily limited
to a review of the trial court's frivolousness finding."). Thus, we must first determine
whether the trial court properly found the appeal to be frivolous before we can reach the
substantive merits of the appeal. See In re S.T., 239 S.W.3d 452, 454 (Tex. App.-Waco
2007, pet. denied); see also Lumpkin v. Tex. Dep't of Family & Protective Servs., 260
S.W.3d 524, 526 (Tex. App.-Houston [1st Dist.] 2008, no pet.).

 We review a trial court's determination that an appeal is frivolous under an abuse
of discretion standard. In re M.N.V., 216 S.W.3d 833, 834 (Tex. App.-San Antonio 2006,
no pet.); In re K.D., 202 S.W.3d at 866. Under this standard, we decide whether the trial
court acted without reference to guiding rules and principles or if the complained-of act is
arbitrary and unreasonable. Lumpkin, 260 S.W.3d at 527 (citing Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)).

 Texas Family Code section 263.405(d)(3) directs the trial court to determine whether
an appeal from a termination order is frivolous "as provided by section 13.003(b), Civil
Practices and Remedies Code." Tex. Fam. Code Ann. § 263.405(d)(3); see Tex. Civ. Prac.
& Rem. Code Ann. § 13.003(b) (Vernon 2002). Section 13.003(b) provides that "[i]n
determining whether an appeal is frivolous, a judge may consider whether the appellant
has presented a substantial question for appellate review." Tex. Civ. Prac. & Rem. Code
Ann. § 13.003(b). Therefore, an appeal is frivolous if it lacks an arguable basis in either
law or in fact. See Lumpkin, 260 S.W.3d at 527 (citing In re K.D., 202 S.W.3d at 866; De
La Vega v. Taco Cabana, Inc., 974 S.W.2d 152, 154 (Tex. App.-San Antonio 1998, no
pet.)).

 An appeal of a termination order is limited to the issues presented in the statement
of points. See Tex. Fam. Code Ann. § 263.405(i); see also Pool v. Tex. Dep't of Family &
Protective Servs., 227 S.W.3d 212, 215 (Tex. App.-Houston [1st Dist.] 2007, no pet.). If
a trial court concludes that an appeal is frivolous, then the court has necessarily
determined that each of the issues identified in the statement of points is frivolous; or, in
other words, that they lack a substantial basis in law or fact. See Lumpkin, 260 S.W.3d at
527 (citing In re S.T., 263 S.W.3d 394, 398-99 (Tex. App.-Waco 2008, pet. denied)). 

III. Analysis

 In the instant case, A.S. argues that she presented substantial questions for
appellate review concerning the statutory basis for the termination of her parental rights.
Specifically, A.S. contends that the evidence was legally and factually insufficient to
support the trial court's order terminating her parental rights based on several statutory
grounds. See Tex. Fam. Code Ann. § 161.001(1) (listing grounds for the termination of
parental rights). 

A. Applicable Law 

 In proceedings to terminate the parent-child relationship brought under section
161.001 of the family code, the petitioner must establish by clear and convincing evidence
that one statutory ground for termination is satisfied and that the termination of the parents
rights are in the best interest of the child. Id. § 161.001; see In re J.L., 163 S.W.3d at 84. 
"'Clear and convincing evidence' means the measure or degree of proof that will produce
in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established." Tex. Fam. Code Ann. § 101.007 (Vernon 2008). 

 "When the trial court conducts a frivolousness hearing on an appellant's proposed
legal and factual sufficiency issues, the trial court should apply the [applicable] standard[s]
of review." In re K.D., 202 S.W.3d at 867-68. In reviewing the legal sufficiency of the
evidence supporting parental termination, the evidence is viewed in the light most favorable
to the finding to determine whether a reasonable trier of fact could have formed a firm
belief or conviction that its finding was true. See In re J.L., 163 S.W.3d at 85 (citing In re
J.F.C., 96 S.W.3d 256, 266 (Tex. 2002)); see also In re K.D., 202 S.W.3d at 867. In a
factual sufficiency review, the court must determine whether, on the entire record, a
reasonable trier of fact could have formed a firm belief or conviction that its finding was true
by considering whether a reasonable fact-finder could not have resolved disputed evidence
in favor of its finding. See In re J.F.C., 96 S.W.3d at 266; see also In re K.D., 202 S.W.3d
at 867. Thus, the question in this case is whether the trial court abused its discretion by
determining that the evidence was such that a fact-finder could reasonably form a firm
belief or conviction that A.S. violated section 161.001(1) of the family code and that
termination is in the children's best interest. See Tex. Fam. Code Ann. § 161.001(1); see
also In re K.D., 202 S.W.3d at 868.

B. Statutory Grounds for Termination

 Here, the trial court concluded that A.S.: (1) "knowingly placed or knowingly allowed
the children to remain in conditions or surroundings which endanger the physical or
emotional well-being of the child"; (2) "engaged in conduct or knowingly placed the child
with persons who engaged in conduct which endangers the physical or emotional well-being of the child"; (3) "failed to support the child in accordance with the parent's ability
during a period of one year ending within six months of the date of the filing of the petition";
and (4) failed to comply with the provisions of the court order necessary for her "to obtain
the return of the child." See Tex. Fam. Code Ann. § 161.001(1)(D)-(F), (O). 

 Under section 161.001(1)(E) of the family code, a parent's rights may be terminated
if it is established by clear and convincing evidence that the parent has "engaged in
conduct or knowingly placed the child with persons who engaged in conduct which
endangers the physical or emotional well-being of the child." Id. § 161.001(1)(E). In
analyzing this subsection, "we look exclusively to the parents' conduct, including actions,
omissions, or the parents' failure to act." Williams v. Williams, 150 S.W.3d 436, 450 (Tex.
App.-Austin 2004, pet. denied) (citing In re D.M., 58 S.W.3d 801, 811 (Tex. App.-Fort
Worth 2001, no pet.)). Termination based on this subsection must be premised on more
than a single act or omission; a voluntary, deliberate, and conscious "course of conduct"
that endangered the children's physical and emotional well-being is required. Id. (citing
Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 534 (Tex. 1987); In re D.M., 58
S.W.3d at 811). "Endanger" means to expose to loss or injury or to jeopardize. See In re
M.C., 917 S.W.2d 268, 270 (Tex. 1996). The endangering acts need not have been
directed at the children or have caused an actual injury or threat of injury to the children to
constitute conduct that endangers the children's physical or emotional well-being. Id. at
269. Moreover, acts directed at the parent's other children may be considered when
determining endangerment to the children that are the subject of the termination
proceedings. See In re Baby Boy R., 191 S.W.3d 916, 925 (Tex. App.-Dallas 2006, pet.
denied) (citing Lucas v. Tex. Dep't of Protective and Regulatory Servs., 949 S.W.2d 500,
503 (Tex. App.-Waco 1997, writ denied), disapproved on other grounds by In re J.F.C.,
96 S.W.3d 256 (Tex. 2002); Trevino v. Tex. Dep't of Protective & Regulatory Servs., 893
S.W.2d 243, 248 (Tex. App.-Austin 1995, no writ)).

 In the instant case, the Department presented evidence that A.S. abused and
continues to abuse drugs, specifically marihuana, amphetamine, and methamphetamine. 
During the traffic stop, Investigator Smith found a loaded methamphetamine pipe, a digital
scale, and a small plastic bag containing a yellowish residue. In addition, Investigator
Smith found a small plastic bag containing methamphetamine in A.S.'s purse. A.S. told
Investigator Smith that: (1) the children's father is a manufacturer of methamphetamine;
(2) she had used methamphetamine approximately two weeks prior to the traffic stop; and
(3) she and the children's father were both regular abusers of marihuana and
methamphetamine. Moreover, the Department tendered the results of the hair-follicle test
that was conducted on A.S., which revealed that she had tested positive for amphetamine
and methamphetamine. The Department also presented evidence that A.S. repeatedly
refused to submit to drug testing.

 On appeal, A.S. argues that the testimony that she had used drugs is not a sufficient
basis to terminate her parental rights. She further argues that there is no evidence that
either she or the children's father had used drugs in the presence of the children. 
However, Texas courts have held that conduct that subjects a child to a life of uncertainty
and instability may endanger the child's physical and emotional well-being under
subsection 161.001(1)(E). In re R.W., 129 S.W.3d 732, 739 (Tex. App.-Fort Worth 2004,
pet. denied) (citing In re S.D., 980 S.W.2d 758, 763 (Tex. App.-San Antonio 1998, pet.
denied)); see In re J.O.A., 283 S.W.3d 336, 345 n.4 (Tex. 2009). Furthermore, drug use
and its effect on a parent's life and ability to parent may establish an endangering course
of conduct. See In re R.W., 129 S.W.3d at 739 (citing Dupree v. Tex. Dep't of Protective
& Regulatory Servs., 907 S.W.2d 81, 84 (Tex. App.-1995, no writ)); see also In re A.O.,
No. 2-09-005-CV, 2009 Tex. App. LEXIS 4857, at *11 (Tex. App.-Fort Worth June 25,
2009, no pet.) (mem. op.) ("Parental and care[-]giver illegal drug use supports a conclusion
that the children's surroundings endanger their physical or emotional well-being.") (citing
In re J.T.G., 121 S.W.3d 117, 125 (Tex. App.-Fort Worth 2003, no pet.); In re S.D., 980
S.W.2d at 763; In re M.M., No. 02-08-00029-CV, 2008 Tex. App. LEXIS 9237, at *17 (Tex.
App.-Fort Worth Dec. 11, 2008, no pet.) (mem. op.)).

 Based on the record before us, we conclude that a reasonable fact-finder could
have formed a firm belief or conviction that A.S. engaged in a course of conduct--the
abuse and possession of illegal narcotics--that endangered all three of her children. See
Tex. Fam. Code Ann. § 161.001(1)(E); see also In re Baby Boy R., 191 S.W.3d at 925;
Lucas, 949 S.W.2d at 503; Trevino, 893 S.W.2d at 248. Thus, we hold that the evidence
supporting termination under section 161.001(1)(E) of the family code is legally and
factually sufficient. Given our holding, we need not address the remaining grounds for
termination specified in the trial court's order. See Tex. R. App. P. 47.1; see also In re S.T.,
263 S.W.3d at 402-03; In re D.M., 58 S.W.3d at 813 (stating that, because only one finding
alleged under section 161.001(1) is necessary to a judgment of termination, a reviewing
court affirming one ground need not address other grounds for termination) (citing In re
S.F., 32 S.W.3d 318, 320 (Tex. App.-San Antonio 2000, no pet.)). However, in order to
uphold the judgment of termination, we must also examine the sufficiency of the evidence
as it relates to the best interest of the children. See In re D.M., 58 S.W.3d at 813-14; see
also In re J.O.C., 47 S.W.3d 108, 114 (Tex. App.-Waco 2001, no pet.). 

C. Best Interest of the Children

 There is a strong presumption that the best interest of the child is served by keeping
custody in the natural parent. See In re K.C.M., 4 S.W.3d 392, 393-95 (Tex.
App.-Houston [1st Dist.] 1999, pet. denied); see also Ziegler v. Tarrant County Child
Welfare Unit, 680 S.W.2d 674, 676 (Tex. App.-Fort Worth 1984, writ ref'd n.r.e.). 
However, in determining whether termination is in a child's best interest, the fact-finder may
consider the following non-exhaustive list of factors outlined by the Texas Supreme Court: 
(1) the desires of the child; (2) the present and future physical and emotional needs of the
child; (3) the present and future emotional and physical danger to the child; (4) the parental
abilities of the person seeking custody; (5) the programs available to assist those persons
in promoting the best interest of the child; (6) the plan for the child by those individuals or
by the agency seeking custody; (7) the acts or omissions of the parent that may indicate
that the existing parent-child relationship is not appropriate; (8) the stability of the home or
proposed placement; and (9) any excuse for the acts or omissions of the parents. Holley
v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976); see In re D.M., 58 S.W.3d at 814. "'Best
interest' does not require proof of any unique set of factors, nor does it limit proof to any
specific factors." In re D.M., 58 S.W.3d at 814 (citing Holley, 544 S.W.2d at 371-72). The
party seeking termination need not prove that each of the Holley factors favors termination,
and the same evidence of acts or omissions used under section 161.001(1) of the family
code may be probative in determining the best interests of the child. See In re C.H., 89
S.W.3d 17, 27 (Tex. 2002); see also In re A.A.A., 265 S.W.3d 507, 516 (Tex.
App.-Houston [1st Dist.] 2008, pet. denied).

 The trial court heard testimony that A.S. is a drug user who repeatedly refused to
submit to drug testing. In addition, at the time of the traffic stop, two of the children were
found in the vehicle with A.S. and the children's father, both of whom were in possession
of illegal drugs and drug paraphernalia while in the presence of the children. The children
were very dirty; Investigator Smith testified that the little boy was sitting in his own urine. 
Investigator Smith further testified that the little boy had spoiled milk in his bottle and that
the little girl was drinking coffee obtained from a convenience store. Moreover, since the
children have been in the custody of the Department, A.S. has failed to make any court-ordered child support payments and has refused to attend counseling and parenting
classes. While A.S. has attended some scheduled visitations with her children, Smithey
testified that many appointments were missed and that A.S. did not demonstrate the ability
to properly care for the children. Finally, we find it telling that A.S. failed to attend the final
hearing on the termination of her parental rights and represented to the trial court that she
was ill and going to the local hospital, yet medical documents contained in the record
reveal that A.S. did not go to the hospital until 9:33 p.m. on the evening of the hearing. 
Furthermore, the record shows that A.S. only stayed at the hospital for thirty minutes and
was not seen by a doctor.

 Considering all of the evidence contained in the record, we hold that a reasonable
fact-finder could have formed a firm belief or conviction that it was in the best interest of
the children for A.S.'s parental rights to be terminated; thus, the evidence supporting the
trial court's best interest finding is legally and factually sufficient. See In re S.T., 263
S.W.3d at 402-03; see also In re J.L., 163 S.W.3d at 85; In re J.F.C., 96 S.W.3d at 266;
In re K.D., 202 S.W.3d at 867. Because we have concluded that the evidence supporting
the termination of A.S.'s parental rights is legally and factually sufficient, we hold that the
trial court did not abuse its discretion in determining that A.S.'s appeal was frivolous. See
Lumpkin, 260 S.W.3d at 526; In re M.N.V., 216 S.W.3d at 834; In re K.D., 202 S.W.3d at
866. Accordingly, we overrule both of A.S.'s issues on appeal.

IV. Conclusion

 We affirm the judgment of the trial court.

 _____________________ ROGELIO VALDEZ,

 Chief Justice


Delivered and filed the

12th day of August, 2010.
1. To protect the privacy of the minor children, we refer to them and the parents by their initials. See
Tex. Fam. Code Ann. § 109.002(d) (Vernon 2008); see also Tex. R. App. P. 9.8(b).
2. T.F., the children's paternal grandmother, testified to the following regarding A.S. and the children's
father's drug use:


 My son and [A.S.] need rehab really bad. My grandkids do not need to go back into their
custody. I called these people twice to save my grandkids because my son and [A.S.] will
not save themselves. You cannot bring children into the world and not take care of them and
not give a crap about them like they have done. . . . Only thing they both care about is that
drug that they're doing and where they can get it from next.
3. Docket was called at 9:00 a.m. on November 9, 2009; however, A.S. was not present. The State
alleges that A.S. called the trial court to report her illness at 9:15 a.m. Upon discovering this, Smithey
immediately went to all the local hospitals to meet with A.S., but she was unable to find A.S. at any of the
hospitals.
4. The trial court denied A.S.'s motion for new trial by an order signed on December 23, 2009.