02-12-002-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00002-CV

 

 


 
 
 In the Interest of M.A.C., A Child
 
 
  
 
 
  
 
 
 
 
  
  
  
 
 
 
 
  
 
 
  
 
 
  
 
 


 

 

----------

FROM THE 323rd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

Appellant
G.C. (Father) appeals the trial court’s judgment terminating his parental
rights to his daughter, M.A.C.[2]  After a bench trial, the
trial court found that Father had engaged in conduct or knowingly placed M.A.C.
with persons who had engaged in conduct that endangered M.A.C.’s physical or
emotional well-being and had knowingly placed or knowingly allowed M.A.C. to
remain in conditions or surroundings that endangered her physical or emotional
well-being.[3]  The trial court also
found that termination of Father’s parental rights would be in M.A.C.’s best
interest.  Father challenges the legal and factual sufficiency of the evidence
in three issues.  We affirm.

II.  Background

In
August 2005, the Texas Department of Family and Protective Services (the Department)
received a referral concerning Mother’s middle child, A.S., because he tested
positive for methamphetamines at birth.[4]  The Department
investigated and determined that there was physical abuse to A.S. and
neglectful supervision of M.A.C. because A.S.’s father was a registered sex
offender who lived in the home and had access to M.A.C.  The Department removed
both children from the home.  In July 2006, the trial court granted A.W., the
maternal grandmother, permanent managing conservatorship of A.S. and M.A.C. and
ordered Father to pay child support for M.A.C.[5]  Father testified that he
had not paid any child support to A.W. but denied that he had been ordered to do
so.

The Department
received a referral in February 2011 that there was drug activity occurring
inside A.W.’s apartment and that the family was believed to be manufacturing
and selling methamphetamines.  The referral also stated that eight-year-old
M.A.C. was often seen outside the apartment alone as late as 11:30 p.m.

Department
investigator Melinda Esquibel testified that she went to M.A.C.’s school after
she received the referral.  M.A.C. was not in school that day, so Esquibel and
law enforcement officials went to A.W.’s apartment.  Esquibel and the law
enforcement officials knocked, but no one answered.  They heard noises inside
the apartment and continued to knock until a female voice answered and told
Esquibel that she had the wrong address after Esquibel said she was looking for
A.W.  Esquibel testified that she heard a child crying inside the apartment and
that the child said, “[N]o, grandma, no.”  Law enforcement officials watching
the back of the building observed A.W. trying to go out the back door with
M.A.C.  Inside the apartment, law enforcement officials found syringes, a small
amount of methamphetamines, an empty cap of heroin, and empty methamphetamine
bags.[6]  Esquibel testified that
law enforcement officials found nothing inside M.A.C.’s room but that the
syringes were found within M.A.C.’s reach on a kitchen counter.

The
Department removed M.A.C. from the home that day.  Esquibel testified that the
Department considered Father as a placement option, but Father told Esquibel
that he did not have a stable environment and that he had a pending assault
charge.  The Department placed M.A.C. in foster care.

Ashley
Moore served as Father’s Department caseworker for the 2011 referral.  Moore
testified that she was initially concerned because Father had not participated
in Department services in the past, because Father possibly lacked a
relationship with M.A.C. because he was not the primary parent, and because Father
had a history of family violence and alcohol abuse.[7]

Father
testified that he was arrested for criminal mischief and was issued a citation
for assault family violence in June 1997 after he kicked in his mother’s VCR. 
Father also testified that he was arrested in 2000 for public intoxication.  In
December 2004, Father was arrested for assaulting his mother-in-law, A.W.; he
pleaded guilty and was convicted for assault family violence.  On April 27,
2011, Father was convicted for assaulting L.S., his girlfriend, and he received
one year of community supervision.  The terms of Father’s community supervision
required that he participate in a batterer’s intervention program (BIPP);
complete eighty hours of community service; attend drug counseling (CATS); and
“not have any form of contact, be it in person, by mail, telephone, or any form
of communication with [L.S.] directly or indirectly for the duration of the
supervision term.”

Moore
developed a service plan for Father and testified that the service plan
correlated with his community supervision requirements so that Father would not
have to complete duplicate services.  Father’s service plan required him to
submit to drug and alcohol assessments, maintain sobriety, participate in BIPP,
and attend individual and family counseling.  The service plan also required
that Father visit regularly with M.A.C., obtain safe and appropriate housing,
abstain from criminal activity, and take responsibility for any prior criminal
involvement.

Moore
testified that Father initiated counseling but only attended three sessions
before he was discharged for non-attendance.  Moore also testified that Father
did not participate in BIPP and had completed only six hours of community
service.  Father testified that he told his counselor that he had drinking
problems in the past and that the longest he had ever gone without drinking was
two weeks.  Father testified that he drank three forty-ounce bottles of beer
and became intoxicated eight months before trial.  He further testified that he
had not been intoxicated in eight months and that he had not had an alcoholic
drink in two months.  Father testified that he is not an alcoholic and that he
does not need to attend Alcoholics Anonymous meetings.

Moore
testified that L.S. brought Father to visitations and that she called L.S.’s
phone to speak with Father.  Moore testified that she believed Father lived
with L.S. because L.S.’s address was the one listed for Father and because
Father previously told Moore he resided with L.S.[8] 
Father, however, denied riding with L.S. to attend visitations.  Father testified
that L.S. received his calls but that she then contacted Father’s cousin who
gave Father his messages.  Father then admitted that he violated his community
supervision by having telephone contact with L.S.  Father also denied living
with L.S. during the case and testified that he lived with his aunt in Grand
Prairie at the time of trial and had lived there for one year.

Court-Appointed
Special Advocate (CASA) Margie Zentner testified that she met L.S. on June 30,
2011, at a visitation.  Zentner testified that Father was also present at that
visit.  Father testified that L.S. had not gone to a visit since the end of
April 2011.

Moore
testified that she had concerns about Father’s ability to provide a stable home
for M.A.C. because Father did not have a plan for M.A.C., appeared to be living
with L.S., had not addressed his domestic violence issues or his alcohol
addiction issues, was unemployed, and appeared to be in violation of his
probation.  Moore testified to her opinion that it was not safe to return
M.A.C. to Father and that Father could not meet M.A.C.’s physical and emotional
needs now or in the future.[9]

Moore
also testified that she had concerns about Father’s relationship with A.W. 
Specifically, Moore testified that she thought Father would give M.A.C. back to
A.W. if he gained custody because A.W. appeared to have control over Father.[10] 
Moore testified that Father brought A.W. with him to visitations.  During the
visits, Father was quiet, sat to the side, and did not interact with M.A.C.
while A.W. often monopolized the visits.  Moore wanted to observe Father at a
visit without A.W. present and asked Father to come alone to the December 1,
2011 visit, but he did not comply and brought A.W. with him.  Moore also
testified that A.W. and Father had contact by phone and visited together throughout
the case.

The
Department asked that the court terminate Mother’s and Father’s parental
rights, and Moore testified that termination would be in M.A.C.’s best
interest.  Moore testified that she recommended termination so that M.A.C.
could be adopted.[11]  CASA Zentner testified
that M.A.C. has made it clear that she is ready to move on with her life in a
new home.  Zentner believes that M.A.C. is “extremely adoptable.”  Zentner
testified that she recommended termination of Mother’s and Father’s parental
rights and that termination would be in M.A.C.’s best interest.

W.B.,
M.A.C.’s foster mother, testified that, when M.A.C. first came into care in
February 2011, she was failing most of her classes and was very hyper, anxious,
immature, and unsettled.  Since being in W.B.’s home, M.A.C.’s school
performance, both academically and behaviorally, has improved; M.A.C. is now on
the A-B Honor Roll.  W.B. testified that M.A.C. is “really catching up and she
knows everything she’s supposed to know for her grade level.”  M.A.C. has
become responsible and is a happy child who laughs and giggles a lot.

W.B.
testified that M.A.C. did not talk about her parents unless W.B. asked who was
at the visits and that M.A.C. returned agitated or sad after some of the
visits.  W.B. testified that M.A.C. is anxious and wants to be adopted and have
a real life.[12]  If M.A.C. is adopted,
she wants to change her middle and last names.  While M.A.C. does not have any
medical issues, she takes a small dose of antidepressants, sees a psychiatrist
every two months, and attends weekly therapy sessions.

III.
 Standards of Review

A
parent’s rights to “the companionship, care, custody, and management” of his or
her children are constitutional interests “far more precious than any property
right.”  Santosky v. Kramer, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397
(1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003).  “While parental
rights are of constitutional magnitude, they are not absolute.  Just as it is
imperative for courts to recognize the constitutional underpinnings of the
parent-child relationship, it is also essential that emotional and physical
interests of the child not be sacrificed merely to preserve that right.”  In
re C.H., 89 S.W.3d 17, 26 (Tex. 2002).  In a termination case, the State
seeks not just to limit parental rights but to erase them permanently—to divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child’s right to inherit.  Tex.
Fam. Code Ann. § 161.206(b) (West 2008); Holick v. Smith, 685 S.W.2d 18,
20 (Tex. 1985).  We strictly scrutinize termination proceedings and strictly
construe involuntary termination statutes in favor of the parent.  Holick,
685 S.W.2d at 20–21; In re R.R., 294 S.W.3d 213, 233 (Tex. App.—Fort
Worth 2009, no pet.).

In
proceedings to terminate the parent-child relationship brought under section
161.001 of the family code, the petitioner must establish one ground listed
under subsection (1) of the statute and must also prove that termination is in
the best interest of the child.  Tex. Fam. Code Ann. § 161.001; In re J.L.,
163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established; termination
may not be based solely on the best interest of the child as determined by the
trier of fact.  Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533
(Tex. 1987); In re D.T., 34 S.W.3d 625, 629 (Tex. App.—Fort Worth 2000,
pet. denied) (op. on reh’g).

Termination
decisions must be supported by clear and convincing evidence.  Tex. Fam. Code
Ann. § 161.001; see also id. § 161.206(a).  Evidence is clear and
convincing if it “will produce in the mind of the trier of fact a firm belief
or conviction as to the truth of the allegations sought to be established.”  Id.
§ 101.007 (West 2008).  Due process demands this heightened standard because
termination results in permanent, irrevocable changes for the parent and child. 
In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see In re J.A.J.,
243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and
modification).

In
evaluating the evidence for legal sufficiency in parental termination cases, we
determine whether the evidence is such that a factfinder could reasonably form
a firm belief or conviction that the grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005).  We review all the evidence in
the light most favorable to the finding and judgment.  Id.  We resolve
any disputed facts in favor of the finding if a reasonable factfinder could
have done so.  Id.  We disregard all evidence that a reasonable
factfinder could have disbelieved.  Id.  We consider undisputed evidence
even if it is contrary to the finding.  Id.  That is, we consider
evidence favorable to termination if a reasonable factfinder could, and we
disregard contrary evidence unless a reasonable factfinder could not.  Id.

We
cannot weigh witness credibility issues that depend on the appearance and
demeanor of the witnesses, for that is the factfinder’s province.  Id. at
573, 574.  And even when credibility issues appear in the appellate record, we
defer to the factfinder’s determinations as long as they are not
unreasonable.  Id. at 573.

In
reviewing the evidence for factual sufficiency, we give due deference to the
factfinder’s findings and do not supplant the judgment with our own.  In
re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We determine whether, on the
entire record, a factfinder could reasonably form a firm conviction or belief
that the parent violated subsections (D) or (E) of section 161.001(1) and that
the termination of the parent-child relationship would be in the best interest
of the child.  Tex. Fam. Code Ann. § 161.001; C.H., 89 S.W.3d at 28. 
If, in light of the entire record, the disputed evidence that a reasonable
factfinder could not have credited in favor of the finding is so significant
that a factfinder could not reasonably have formed a firm belief or conviction
in the truth of its finding, then the evidence is factually insufficient.  H.R.M.,
209 S.W.3d at 108.

IV.  Statutory
Endangerment

Father
argues in his first and second issues that the evidence is legally and
factually insufficient to support the trial court’s section 161.001(1)(D) and
(E) findings.

A.  Applicable
Law 

“Endanger”
means to expose to loss or injury, to jeopardize.  Boyd, 727 S.W.2d at
533; In re J.T.G., 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no
pet.).  Under section 161.001(1)(D), it is necessary to examine evidence
related to the environment of the child to determine if the environment was the
source of the endangerment to the child’s physical or emotional well-being.  J.T.G.,
121 S.W.3d at 125.  Conduct of a parent in the home can create an environment
that endangers the physical and emotional well-being of a child.  In re W.S.,
899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no writ). For example, abusive
or violent conduct by a parent or other resident of a child’s home may produce
an environment that endangers the physical or emotional well-being of a child. 
See id. at 776–77; Ziegler v. Tarrant Cnty. Child Welfare Unit,
680 S.W.2d 674, 678 (Tex. App.—Fort Worth 1984, writ ref’d n.r.e.).

Under
section 161.001(1)(E), the relevant inquiry is whether evidence exists that the
endangerment of the child’s physical well-being was the direct result of the
parent’s conduct, including acts, omissions, or failures to act.  See J.T.G.,
121 S.W.3d at 125; see also Tex. Fam. Code Ann. § 161.001(1)(E). 
Additionally, termination under (E) must be based on more than a single act or
omission; the statute requires a voluntary, deliberate, and conscious course of
conduct by the parent.  J.T.G., 121 S.W.3d at 125; see Tex. Fam.
Code Ann. § 161.001(1)(E).  It is not necessary, however, that the parent’s
conduct be directed at the child or that the child actually suffer injury.  Boyd,
727 S.W.2d at 533; J.T.G., 121 S.W.3d at 125.  The specific danger to
the child’s well-being may be inferred from parental misconduct standing alone.
 Boyd, 727 S.W.2d at 533; In re R.W., 129 S.W.3d 732, 738 (Tex.
App.—Fort Worth 2004, pet. denied).

“To
determine whether termination is necessary, courts may look to parental conduct
occurring both before and after the child’s birth.”  In re M.E.-M.N.,
342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied) (citing In re
D.M., 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.)).  The factfinder
may infer from past conduct endangering the child’s well-being that similar
conduct will recur if the child is returned to the parent.  In re M.R.J.M.,
280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh’g).  Even
evidence of criminal conduct, convictions, and imprisonment prior to the
child’s birth will support a finding that a parent engaged in a course of
conduct that endangered the child’s well-being.  J.T.G., 121 S.W.3d at
133.

B.  Discussion

Father
argues that the Department placed M.A.C. in foster care because of drug
activity in A.W.’s home and that he did not live there and had no knowledge of
any illegal drug activity occurring there.  Father also argues that his prior
family violence convictions were misdemeanors, that he is not an alcoholic, and
that his actions have not endangered M.A.C.

The
Department responds that Father’s parental rights were not terminated for
anything that happened while M.A.C. was in A.W.’s custody but were instead
terminated for Father’s own continuing course of conduct that started in 2005
with the initial removal and continued through the time of trial.  The
Department points to evidence that Father provided the court with an address in
Irving, not Grand Prairie, as his residence ten months before trial; failed to
pay any child support for M.A.C.; and failed to complete his service plan.  See
In re R.D., 955 S.W.2d 364, 368–69 (Tex. App.—San Antonio 1997, pet. denied)
(holding parents’ failure to financially support the child, giving false
information to the court regarding their residence, and failure to attend
parenting classes is evidence of their course of conduct that endangered the
child’s physical or emotional well-being).

Moreover,
Father has a conviction for assault family violence against M.A.C.’s maternal
grandmother, a citation for assault family violence against his own mother, and
another conviction for assault on his girlfriend.  This court has held that
abusive or violent conduct by a parent or other resident of a child’s home may
produce an environment that endangers the physical or emotional well-being of a
child.  See In re D.C., 128 S.W.3d 707, 715 (Tex. App.—Fort Worth 2004,
no pet.); see also W.S., 899 S.W.2d at 776–77.

The
trial court also heard testimony concerning Father’s alcohol abuse.  Father’s
service plan required him to maintain sobriety; however, Father admitted to
getting intoxicated eight months before trial.  Father contends there is no
evidence that his alcohol use caused any danger to M.A.C.; however, Father’s
conduct did not necessarily have to be directed at M.A.C., and M.A.C. is not
required to suffer injury.  See Boyd, 727 S.W.2d at 533; see also In
re S.D., 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied) (explaining
that conduct that subjects a child to a life of uncertainty and instability
also endangers the child’s physical and emotional well-being).  Evidence
of alcohol abuse by a parent can support a determination that the parent has
engaged in a course of conduct that has the effect of endangering the child.  In
re S.N., 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.).

Father
focuses only on evidence favorable to his position and minimizes the other
evidence supporting the trial court’s judgment.  While the evidence is in many
respects conflicting, the trial court is the sole judge of the credibility of
the witnesses and the weight to be given to their testimony.  See J.P.B.,
180 S.W.3d at 573; see also In re T.N., 180 S.W.3d 376, 382–83 (Tex.
App.—Amarillo 2005, no pet.) (“[T]he fact finder, as opposed to the reviewing
body, enjoys the right to resolve credibility issues and conflicts within the
evidence.  It may freely choose to believe all, part, or none of the testimony
espoused by any particular witness.”).  The trial court could have determined
that Father endangered M.A.C. through his history of domestic violence, prior
criminal convictions, alcohol abuse, probation violations, failure to pay child
support, discharge from counseling, and refusal to address issues in his life
that are potentially dangerous or harmful to M.A.C.

Applying
the appropriate standards of review, we hold that the evidence is legally and
factually sufficient to support the trial court’s findings that Father engaged
in conduct or knowingly placed M.A.C. with persons who had engaged in conduct
that endangered her physical or emotional well-being and that he knowingly
placed or knowingly allowed M.A.C. to remain in conditions or surroundings that
endangered her physical or emotional well-being.  See Tex. Fam. Code.
Ann. § 161.001(1)(D), (E); see also H.R.M., 209 S.W.3d at 108; J.P.B.,
180 S.W.3d at 573.  We thus overrule Father’s first and second issues.

V.  Best
Interest

Father
argues in his third issue that the evidence is factually insufficient to
support the trial court’s finding that termination of his parental rights is in
M.A.C.’s best interest.  See Tex. Fam. Code Ann. § 161.001(2) (requiring
clear and convincing evidence “that termination is in the best interest of the
child”).

A.  Applicable
Law

There
is a strong presumption that keeping a child with a parent is in the child’s
best interest.  In re R.R., 209 S.W.3d 112, 116 (Tex. 2006).  Prompt and
permanent placement of the child in a safe environment is also presumed to be
in the child’s best interest.  Tex. Fam. Code Ann. § 263.307(a) (West 2008). 
Nonexclusive factors that the trier of fact in a termination case may use in
determining the best interest of the child include:

(A)     the desires of the child;

(B)     the emotional and physical
needs of the child now and in the future;

(C)     the emotional and physical
danger to the child now and in the future;

(D)     the parental abilities of the
individuals seeking custody;

(E)     the programs available to
assist these individuals to promote the best interest of the child;

(F)     the plans for the child by
these individuals or by the agency seeking custody;

(G)     the stability of the home
or proposed placement;

(H)     the acts or omissions of
the parent which may indicate that the existing parent-child relationship is
not a proper one; and

(I)      any excuse for the acts or
omissions of the parent.

Holley
v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations
omitted).  These factors are not exhaustive; some listed factors may be
inapplicable to some cases; other factors not on the list may also be considered
when appropriate.  C.H., 89 S.W.3d at 27.  Furthermore, undisputed
evidence of just one factor may be sufficient in a particular case to support a
finding that termination is in the best interest of the child.  Id.  On
the other hand, the presence of scant evidence relevant to each factor will not
support such a finding.  Id.

B.  Discussion

Father
points to the strong presumption that keeping a child with her parent is in the
child’s best interest, and he argues that the Department’s “concerns regarding
[his] alcohol use and domestic violence are premised upon speculation.”  Father
also points to evidence that M.A.C. was living with A.W. at the time of removal
and that he was powerless with regard to making basic parenting decisions.

The
evidence is discussed in detail above, and we do not repeat it at length here. 
M.A.C. is doing well in foster care, and she has bonded with her foster
family.  She has expressed a desire to be adopted and does not wish to keep her
father’s surname.  While M.A.C.’s current foster parents are unable to adopt
her, the Department’s plan is for M.A.C. to be adopted, and Zentner described
M.A.C. as “extremely adoptable.”

In
contrast, Father has a history of domestic violence and alcohol abuse.  The
trial court also heard evidence of his community supervision violations. 
Father was discharged from counseling for non-attendance and has not
participated in the domestic violence treatment program.  Father also has not
paid child support.  In addition, Father turned down M.A.C. living with him in
2011.  In short, Father has continually refused to take the steps necessary to
address his anger and alcohol abuse, despite being on notice that his parental
rights could be terminated for failure to do so.

Viewing
the entire record and giving due deference to the factfinder’s findings, we
conclude that the evidence is such that the trial court could reasonably form a
firm belief or conviction that termination of Father’s parental rights is in
M.A.C.’s best interest.  See H.R.M., 209 S.W.3d at 108.  We therefore
hold that the evidence of M.A.C.’s best interest is factually sufficient to
support the judgment, and we overrule Father’s third issue.

VI.  Conclusion

Having
overruled each of Father’s issues, we affirm the trial court’s judgment.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER,
WALKER, and MCCOY, JJ.

 

DELIVERED:  October 11, 2012










 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-12-00002-CV

 

 


 
 
 In
 the Interest of M.A.C., A Child
  
  
  
  
  
  
 
 
 §
  
 §
  
 §
  
 §
  
  
 
 
 From the 323rd District
 Court
  
 of
 Tarrant County (323-81441J-05)
  
 October
 11, 2012
  
 Opinion
 by Justice Gardner
 
 


 

JUDGMENT

 

This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Justice Anne Gardner

 








 

 









[1]See Tex. R. App. P. 47.4.





[2]The trial court also
terminated J.W.’s (Mother’s) parental rights, but Mother has not appealed the
judgment.





[3]See Tex. Fam. Code
Ann. § 161.001(1)(D), (E) (West Supp. 2012).





[4]Father is not A.S.’s
father.





[5]The trial court terminated
A.W.’s court-ordered relationship with M.A.C. in the judgment in this case, and
A.W. has not appealed the judgment.





[6]The record is unclear as
to why law enforcement officials went inside A.W.’s apartment.





[7]Moore testified that
Father had not participated in services when M.A.C. was removed in 2005.





[8]Father supplied the court
with an address in Irving, Texas, ten months prior to trial.  L.S. lived in
Irving.





[9]Moore testified that in
her experience, “domestic violence assaults on family members, is . . . conduct
and conditions that endanger[s] the well-being of a child.”





[10]Moore also testified that
she had contact with relatives who had been asked to take custody of M.A.C. so
that A.W. could regain custody of the child.





[11]Based on Moore’s
relationship with M.A.C. and her observations of M.A.C., Moore believed M.A.C.
was ready to be adopted. Moore completed a broadcast and received over forty
home studies of families wanting to adopt M.A.C.





[12]M.A.C.’s current foster
parents are not considering adopting M.A.C.; W.B. testified that she would like
to adopt M.A.C. but that she believes she is too old to be an adoptive parent.